## BRASHEAR v. WILLIAMS.

1. In the absence of proof that a savage tribe of Indians, have laws or customs having the force of law, regulating the descent of property, the presumption arises, that the property of a deceased person would belong to the first occupant.

2. After the extension of the laws of the State over the tribe, property in the possession of Indians, is *prima facie* liable to the payment of their debts.

3. The orphans' court of Sumter had jurisdiction to grant administration upon the estate of an Indian, who died before the laws of the State were extended over the Indian nation.

4. Until distribution of an estate is made, the legal title to the assets remains in the personal representative, no matter where the possession is. If however, the debts are all paid, and the distributees, with the assent of the ad-

Brashear v. Williams.

ministrator, make an amicable division of the property, or agree to keep it together in common, it will be responsible for their debts, in proportion to their interest in it.

5. A claimant who asserts a title to the property in dispute, by a purchase under execution, against a third person, must prove that such person had a title to the property, which could be sold by the execution against him, but is not required to prove, that there was a judgment authorizing such a sale.

Error to the Circuit Court of Sumter.

TRIAL of right of property. The defendant in error having obtained a judgment against Delilah Wall, sued out execution thereon, which was levied on certain slaves, to which a claim was interposed by the plaintiff in error. Upon the trial it was proved, that the defendant in execution, and the claimant resided together, and that the claimant exercised acts of ownership over the slaves, but they were considered by the witness as in possession of the defendant. It was also proved, that the defendant resided in Sumter county, then a part of the Choctaw nation, and was of Indian extraction, and was the reputed widow of Jesse Brashear, who had died about a year before, and that the slaves were in the possession of the family at that time. That the defendant was afterwards the reputed wife of David W. Wall. That the Choctaws had no particular marriage ceremony, and that a man and woman living together, were afterwards considered as man and wife.

The records of the orphans court were also produced, showing that Jesse Womack had been administrator of the estate of Jesse Brashear, and that James Hair, was appointed administrator *de bonis non*, in August, 1841. The claimant produced and read in evidence, a bill of sale for said negroes, signed by Robert Crawford, marshal, by his deputy, dated 5th February, 1838, conveying all the right of David W. Wall to said slaves, and that Womack bought the negroes for the benefit of the heirs of Jesse Brashear, of which the claimant was one ; the names of the others were proved—he also proved by parol, the sale of the slaves under execution, and

the purchase by Womack for the heirs of Brashear. It was shown, that the estate was settled up before the levy of the execution, and all the children of Brashear resided on the same place with their mother.

On motion of the plaintiff, the court excluded all the testimony relating to the sale by the marshal, because the authorty under which he made the sale was not proved, to which the claimant excepted.

The claimant moved the court to charge the jury, that the undivided interest of a distributee of an estate of a deceased person, is not the subject of levy and sale by execution at law, against one of the distributees. Also, that if Jesse Brashear lived and died in the Choctaw nation, before the same was erected into Sumter county, where the family continued to reside, and that claimant took possession of the property immediately after he came of age, and continued to exercise acts of ownership over it, it devolved upon the plaintiff to show, that by the laws of the Choctaws the widow became entitled to a share at least of the property of Jesse Brashear, and if the plaintiff had failed so to do, they must find for the claimant.

The court refused these charges, and charged, that it was necessary the plaintiff should show, that by law the defendant had some legal interest in the property, before they could find it subject to the execution, and further charged, that if they believed the defendant had an undivided interest in the estate of Jesse Brashear, and that was an interest in possession, it was liable to levy and sale under execution, to all which the claimant excepted.

The jury found, that the slaves levied on, " are subject to the attachment, and assess the value," &c. Upon which the court rendered judgment, that the slaves " be adjudged, and held subject to the plaintiff's attachment, and condemned to satisfy the same," &c.

The errors assigned are the matters arising out of the bill of exceptions, and, second, that the verdict does not respond to the issue.

HAIR, for plaintiff in error.
SMITH, contra.

Brashear v. Williams.

ORMOND, J.—Jesse Brashear, a Choctaw Indian, died in the Indian nation, previous to our laws being extended over it, in possession of a number of slaves. His widow afterwards married one Wall, since which time, and since that portion of the Indian nation has been erected into the county of Sumter, a portion of these slaves have been levid on, as the property of Mrs. Wall, and claimed by one of the children of Brashear, in the name of himself and the others.

What are the rules of descent among the Choctaws, or whether they have any established usage or custom, having the force of law, by which the widow is entitled to a portion of her husband's estate, or whether she had a separate estate in any of these slaves, are subjects upon which the record is silent. In the absence of such proof, it appears to us, the necessary presumption must be, that in a savage tribe, laws do not exist, regulating the descent of property, and that being in a state of nature, the property would belong to the first occupant. This was the wife, or the wife and children of the deceased, as it appears they were found in possession of the property after his death.

After these people became subject to our laws, by the jurisdiction of our courts being extended over the country in which they lived, the property in their hands, would be subject to the payment of their debts, as possession is *prima facie* evidence of title. In whom that possession was, whether in Mrs. Wall alone, or jointly with her, and her children, or in the children alone, was a question of fact for the jury. If the possession was in Mrs. Wall, either separate or joint, it was as we have seen, *prima facie* evidence of title in her, and to the extent of her interest, was subject to the payment of her debts. It then devolved on the claimants to show a title in themselves. If they asserted this title in virtue of a Choctaw law, usage, or custom, it devolved on them to establish it. A party seeking the advantage of a foreign law, must prove its existence. [Talbot v. Seaman, 1 Cranch, 38.]

The case is still further involved by the circumstance, that after the jurisdiction of the state was extended over that portion of the Choctaw nation, now Sumter county, administration of the estate of Jesse Brashear, was granted by the

orphans' court of that county, to one Womack, who retained it several years, and that in 1841, James Hair was appointed administrator *de bonis non*.

Although Brashear died in the Indian nation, before it was subject to our law, there can be no doubt the orphans' court of Sumter could grant administration of the estate found within its jurisdiction, as in no other mode, could debts which he might have owed be enforced. The fact that Jesse Brashear died, whilst the country he resided in was a part of the Indian nation, and not subject to our law, would have no other effect than to regulate the distribution of the property after the debts were paid according to the usages and customs of the tribe, if any there were, providing for the succession of personal property.

It appears from the record, that the estate has been settled, but we infer from the charge moved for, as well as that given, that no order of distribution has been made, and until that is done, the legal title must remain in the administrator no matter where the possession is. If however, the debts being all paid, the parties interested, with the assent of the administrator, express or implied, have made an amicable division of the property, or have agreed to keep it together in common, it cannot be doubted, it would be responsible for their debts in proportion to their interest in it.

The case is still further perplexed by the marriage of Wall with the widow of Brashear, the sale of the slaves for the payment of Wall's debts, and their purchase by the heirs of Brashear, the present claimants.

In trials of the right of property, under our statute, when the plaintiff in execution has made out a *prima facie* case, the claimant must prove property in himself; he cannot defeat the plaintiff by proving property in a third person. [B'k at Montgomery v. Parker, 5 Ala. 738.] For this purpose, doubtless, the evidence was offered. Proof of the marshal's title would avail nothing, without the further proof that Wall had also a title to the slaves, which could be sold under execution, but the party had the right to introduce his testimony, in the order he thought proper, and the court could not reject it if competent testimony, because without further proof

it did not make out the case. It was in fact rejected by the court, because the authority under which the marshal sold, as well as his title, was not produced.

The general rule is unquestionable, that where one deraigns title to property, either real or personal, by a purchase at an execution sale, he must show a judgment authorizing a sale, but in our opinion that doctrine does not apply to this case. It is the necessary inference from this record, that Wall does not controvert the title thus acquired, but has acquiesced in it. This being the case, the plaintiff who is a stranger to the judgment against Wall, has not the right to question it, and the production of the marshal's conveyance of the slaves, accompanied by a delivery of possession to the claimants, was, as against the plaintiff in execution, *prima facie* evidence of right to sell. It did not however conduce to prove a title in Wall, as against the defendant in execution, whose title the plaintiff in execution is asserting, and would be entirely valueless without additional substantive proof, that Wall had a title to the slaves, which could be sold by the marshal and conveyed to the claimants.

Applying the law to the facts of the case, and the action of the court upon them, it appears the court erred in excluding the bill of sale of the marshal which was competent testimony as one link of the claimant's title, and in refusing to charge that the individual interest of a distributee was not the subject of levy and sale by execution.

We are also inclined to think, that the verdict and judgment are insufficient, but as it is not necessary to express an opinion upon this point, we abstain from doing so.

Let the judgment be reversed and the cause remanded.