## BRANCH BANK AT MONTGOMERY v. WADE.

1. The assets of an estate in the hands of an administrator, cannot be sold by execution for the payment of his debts, although he has made no return of the property levied on, and may be guilty of a devastavit, if he has not actually converted the property to his own use.

2. The possession and use of the property, by the administrator, is not evidence of a conversion, the administrator having married the widow of the intestate, and there being children of the former marriage in their minority.

Error to the Circuit Court of Benton. Before the Hon. G. W. Lane.

A writ of *fieri facias* issued from the circuit court of Montgomery, against the goods and chattels, &c. of A. P. Wade and another, which was levied on a male slave, named Sampson. The defendant in error made an affidavit pursuant to the statute, declaring that the slave in question belonged to the estate of William Johnson, deceased, of which he was the administrator, and executed a bond with surety to try the right. An issue was made up and submitted to a jury, who returned a verdict for the claimant, and judgment was thereon rendered.

From a bill of exceptions sealed at the plaintiff's instance,

it appears that the slave levied on, was in the possession of the defendant in execution at the time of the levy, and that the claimant and defendant were the same person. The slave was the property of Wm. Johnson, deceased, at the time of his death; that the claimant administered, on decedent's estate, about ten years previous to the trial, in Benton county, and took possession of Sampson shortly thereafter. The intestate left four or five children, who were still in their minority. Since the grant of administration, the claimant has employed the slave in his own service, and received and enjoyed the proceeds of his labor for almost ten years. The slave is of the value of six or seven hundred dollars, and has never been reported by the claimant to the orphans' court, as part of the intestate'es estate. Claimant still continues to be administrator, but he has not made a settlement of the estate.

The court charged the jury, if they believed the evidence they ought to find for the claimant; and thereupon the plaintiff excepted, &c.

A. J. WALKER, for the plaintiff in error, insisted, that the failure to return the slave to the orphans' court, as part of the intestate's estate, and his employment by the claimant, and receipt of the profits of his labor, made him liable to the claimant's creditors. Clay's Dig. 225, § 26; 7 Ala. R. 906. The proof was too uncertain to justify the charge that was given. 10 Ala. 346, 999.

S. F. RICE, for the defendant in error. The intestate's estate cannot be subjected to the payment of the individual debts of the administrator. 4 Ala. Rep. 444; 5 Id. 192; 6 Id. 399. In such case the administrator may interpose a claim in his representative character. 3 Bibb's Rep. 510; 8 Port. Rep. 574. Until distribution of the estate is made, it remains with the administrator. 10 Ala. Rep. 630. The omission to return the slave as assets to the orphans' court, is not a conversion, which makes him liable to the administrator's individual debts. 11 Ala. 1023.

COLLIER, C. J.—It is supposed by the plaintiff in error, that the case of Williamson v. The Branch Bank at Mobile, 7 Ala. Rep. 906, is decisive of the present. It was there held, that as between the executor and his immediate creditor, assets of the testator may be seized and sold under execution, whenever there has been a *devastavit*, or where the executor has so dealt with the assets as to be responsible for a *devastavit*, or has used them in a manner inconsistent with his trust. But where an executor holds assets in accordance with the trust of the will, he may prevent a sale of them, when levied on for his own debts, by interposing a claim under the statute, and possibly by a bill in equity. It has however been decided, that until an order has been made distributing the estate of an intestate, the legal title must remain in the administrator, no matter where the possession may be. 10 Ala. 630.

The act of 1821, directs that executors and administrators, within three months after their appointment, shall return to the clerk's office a full inventory of the goods and chattels, &c. which have come to their possession, or knowledge, setting forth the times at which debts are due, &c. *Further*, "inventories and accounts of sales shall be subscribed and sworn to by the executor or administrator returning the same, before the judge, clerk, or some justice of the peace." Clay's Dig. 225, § 26. By a statute passed in 1809, it is enacted, that it shall not be lawful for any executor or administrator to take the estate, or any part thereof, of any testator or intestate, at the appraised value, or to dispose of the same at private sale, except where the same is directed by the will of the testator ; but where it shall be necessary to sell the whole or any part of the personal estate, an order shall be obtained from the orphans' court, and the sale shall be public. Clay's Dig. 223, § 13.

The case of Williamson v. The B. B'k at Mobile, I incline to think is very well supported by English adjudicaions, under the influence of a system which gives to an executor or administrator more enlarged powers and discretion. I however doubted whether those decisions could be applied in this state, where the authority of the personal representative was defined, and so much restricted by legislation ; conse-

quently I rested my concurrence in the case referred to upon grounds independent of the point noticed. While both of my then learned associates thought the English decisions applicable, one of them delivered an opinion in harmony with mine on other points; so that it may perhaps be questioned whether what was said in respect to the estate of a testator becoming liable to the creditors of the executor upon the *devastavit* of the latter is *res adjudicata*. Be this however as it may, we are satisfied that the facts of the case at bar, do not bring it within the principle of that decision.

The administrator, we have seen, is prohibited from taking the estate of the intestate, at its appraised value, or selling it otherwise than at public sale, and then only under the order of the orphans' court. The question might be asked, whether, under this modification of the law, the administrator could convert the estate of his intestate for the benefit of himself or creditors, or to the prejudice of the creditors and distributees of the intestate? But we waive the point, since it is clear that no *devastavit* which does not amount to an actual conversion, can give to the creditors of the administrator any rights.

True, the administrator failed to return the slave in his inventory, yet this omission to do what the statute enjoins, cannot change the *status* of the property, or impair the rights of creditors or distributees. If any *devastavit* can have that effect, it must be one which amounts to an *actual conversion*. Here there is no predicate from which a conversion can be inferred. The administrator married the widow of his intestate, who was the mother of four or five children of her former marriage, who are still in their minority. If the children have no guardians appointed by law, and no distribution has been made, where else can the possession of their father's estate so properly remain as with their mother and her present husband. The failure to make a final settlement, and the receipts of the profits of the labor of the slaves, is not a conversion in fact. It may be that the claimant supports and educates the children, and thus they become his debtors; if this be not so, he will be bound to pay them what they are entitled to.

In addition to this, it may be asked, if it would not be un-

just to the sureties of an administrator to allow the estate of the intestate to be appropriated to the payment of the debts of the administrator, where there has not been an *actual conversion*, though in point of law, there may have been a *devastavit*.

We think the proof very clearly establishes, that the slave was not liable to the execution ; and consequently, the charge of the court is unobjectionable.    The judgment is therefore affirmed.