The Branch Bank at Montgomery v. Parker.

## THE BRANCH BANK AT MONTGOMERY v. PARKER.

1. Interrogatories propounded to a party under the act of 1837, " More effectual-
ly to provide for discoveries in suits at common law," should either in them-
selves, or by the affidavit of the party exhibiting them, affirm the existence of
the facts sought to be elicited, and that they are within the knowledge of the
party called on to answer. Although the party thus examined undertake to
answer without objection, an exception to his answers for insufficiency, will not
be sustained, where the defects of the interrogatories are such, that it does not
appear that his answers will be material.

2. A party cannot use his answer to a bill of discovery, as evidence in his favor,
unless it is introduced by his adversary, and the same rule applies to answers to
interrogatories propounded by one party to the other, under the act of 1837.

3. The fact whether a party was embarrassed, where it is a direct and material
inquiry in the cause, cannot be proved by common reputation ; but if his em-
barrassment is shown, by proper evidence, it seems that common reputation is
admissible, to bring home a knowledge of the fact to one who resides near him,
or who is acquainted with the state of his affairs.

4. To authorize the claimant of property to show on the trial of the right thereto,
that he is its proprietor, it is not necessary for the issue specially to affirm that
fact ; it is enough for the claimant to deny that the property is subject to the ex-
ecution, in the general terms in which the plaintiff asserts it.

WRIT of Error to the circuit court of Autauga.

This was a trial of the right of property under the statute. In
July 1842, a writ of *fieri facias* previously issued at the suit of
the plaintiff in error against Ashley Parker, was levied on sundry
slaves, as the property of the defendant therein, to which the de-
fendant in error interposed a claim in the manner prescribed by
law. An issue was made up by the plaintiff's affirming that the
slaves were the property of the defendant in execution, and liable
to satisfy the same, and the claimants denying the truth of the af-
firmation.

Preparatory to a trial, the plaintiff propounded certain inter-
rogatories to the claimant, and as a foundation therefor, an affida-
vit was made by its attorney, that he believed the answers of the
claimant thereto, would be material on the trial of the cause.
The claimant answered the interrogatories without objection, but
the plaintiff considering his answers to several of the questions

insufficient, filed exceptions thereto, which were overruled by the court.

From a bill of exceptions sealed at the instance of the plaintiff, it appears that the slaves in question were once the property of the defendant in execution, and were levied on at the residence of the claimant, with whom he had been living for the nine or ten months preceding. The claimant on his part, introduced a bill of sale for the slaves from the defendant in execution in considertion of fifty-eight hundred and twenty-five dollars, paid by the former to the latter. It was also proved by the subscribing witness, that he saw the claimant pay some money to the vendor, but does not know the amount; at the same time he saw the latter return ten dollars, stating that he had been overpaid that sum. The claimant then adduced evidence tending to show his ability to purchase the slaves for cash.

The plaintiff then asked a witness whether it was generally reported in the neighborhood of the vendor's residence, before or about the time of the sale of his negroes to the claimant, that he was much embarrassed, to which question the claimant objected, and his objection sustained. The plaintiff also inquired of the witness, whether from what was said by the neighbors of the vendor, about the time referred to in the question first proposed, he would suppose it was generally known in his neighborhood that he was much embarrassed, to which question the claimant objected, and his objection was in like manner sustained. Before the claimant closed his evidence, he offered to read to the jury, his answers to the interrogatories filed by the plaintiff; to this the plaintiff objected, but his objection was not sustained, and the interrogatories and answers read accordingly—all which are made part of the bill of exceptions.

The evidence being closed, the plaintiff moved the court to exclude from the jury, the bill of sale, and all the evidence tending to prove that the claimant was the owner of the slaves, on the ground that it was not admissible under the issue: the court offered to permit claimant to amend the pleadings if the plaintiff would consent, but the latter declining to do so, the court refused to exclude the evidence. To the admission of evidence, and the refusal to exclude evidence as shown above, the plaintiff excepted, &c.

J. W. PRYOR, for the plaintiff in error insisted.—1. That the

exceptions to the answers of claimant to the plaintiff's interroga-
tories should have been sustained. [See act of 1837; 3 Phil. Ev.
C. & H's notes, 932, 652, 859, 1206.] 2. The claimant ought
not to have been permitted to read the interrogatories and an-
swers as evidence to the jury. Phillips v. Thompson, [1 Johns.
Chancery Reports, 141; 3 Phil. Ev. C. & H's notes, 926.]
3. The witness should have been permitted to answer the ques-
tions as to the notoriety of the indebtness of defendant in execu-
tion in the neighborhood of the latter, because great latitude is
allowed where the question is whether there is fraud or no. 4.
The form of the issue would not admit the bill of sale and other
evidence of claimant's title, as the claimant did not in his response
to the issue tendered, assert that he was the owner of the slaves.

G. W. GAYLE, for the defendant in error, contended.—1. That
the interrogatories, so far as material, were fully answered. 2.
That the interrogatories and answers were evidence for the claim-
ant, either on the ground that they were nothing more than a de-
position, or were to be treated as an answer brought from chan-
cery, to be used as evidence. [Greenl. Ev. 397, § 351; 3 Atk.
Rep. 408; 9 Ves. Rep. 282.] 3. As to the proof of insolvency,
direct evidence by creditors or others acquainted with the in-
debtedness of the defendant in execution, would be more satisfac-
tory than mere hearsay or rumor in his neighborhood—in fact
the latter was properly excluded. 4. The issue was, whether
the slaves were liable to the plaintiff's execution, and in the de-
termintion of this question, it was strictly proper for the claimant
to prove a title in himself.

COLLIER, C. J.—By the act of 1837, " more effectually to
provide for discoveries in suits at common law," it is enacted,
" that hereafter any party, plaintiff or defendant in any action at
law, pending in any circuit or county court in this State, wishing
a discovery from the adverse party, to be used in evidence at the
trial of such action, may file written interrogatories to such party
and call upon him to answer the same in solemn form on his oath,
or affirmation, and if upon such interrogatories being filed, it
shall appear to the court by the oath of the party filing the same,
or otherwise, that answers to such interrogatories will be mate-
rial evidence in the cause, and that the interrogatories themselves

are pertinent, and such as the adverse party would be bound to answer upon a bill of discovery in a court of chancery, the court shall allow such interrogatories, and shall make an order requiring the adverse party to answer the same in writing, and in solemn form, on his oath or affirmation, and the answers to such interrogatories being so given and filed, shall be evidence at the trial of the cause, in the same manner, and to the same purpose and extent, and upon the same condition in all respects as if they had been procured upon a bill in chancery for discovery, but no further, or otherwise." *Further,* if the party to whom the interrogatories shall be propounded, shall for sixty days after service of notice and copy thereof, fail to answer the same, or answer them evasively, the court may attach him, and compel him to answer in open court, or may continue the cause and require more direct and explicit answers, &c.

In Goodwin v. Wood, at the last term, it was decided that the object of this statute was to expedite and cheapen the administration of justice, by authorising one party to call upon the other for a discovery at law, instead of resorting to equity; but it did not allow a party to propose to his adversary, any interrogatories, except such as he " would be bound to answer upon a bill of discovery in a court of chancery," and the answers are only evidence in the same manner " as if they had been procured upon a bill in chancery;" consequently, interrogatories seeking the disclosure of certain facts, but which neither themselves, or the affidavit of the party exhibiting them affirmed, to exist, or to be within the knowledge of him to whom they were addressed, were regarded as in the nature of a *fishing bill,* to which no answer would be coerced. The interrogatories propounded in the case before us, are obnoxious to the objection made in the case cited; they call upon the claimant to answer many questions, of which it is not alleged that he had a knowledge. Neither is the pertinency of all these inquiries quite obvious; nor do they derive any aid from the generality of the affidavit, which merely declares the belief that the answers will be material on the trial of the cause. The claimant then might with propriety have refused to answer the interrogatories; but having undertaken to answer them, was he not bound to answer them fully? It is frequently stated as a rule, that " if a defendant submits to answer a bill, he is bound to answer it fully." By

this, says Mr. Wigram, in his treatise on discovery, we are not to understand, that he is bound to answer every question the bill contains. It means nothing more than having elected to make his defence by answer, he cannot urge the demurrable character of the bill only, as a reason for not answering particular questions. The submission to answer, concludes as to that, *but no further.* The rule decides only, that an answer which is the result of *choice*, is subject to the same rules as an answer *from necessity.* [See pages 192–3.] In determining upon the sufficiency of an answer, it is necessary to consider whether the omissions complained of, are material. [Id. 66, 76.] And the party seeking a discovery, is bound to inform the court for what purpose it is sought, in order that the court may judge of its materiality. [Id. 68, 148; Cardale v. Watkins, 5 Mad. Rep. 18.] The answer of the claimant does not discover an intention to answer, but in part only, the numerous minute and searching inquiries contained in the interrogatories, yet he has omitted some. But whether an answer to these, most favorable to the plaintiff would be material evidence on the trial, the defects in the interrogatories are such that we cannot determine. The exceptions to the answers cannot be sustained, without the risk of making a requisition upon the claimant, which may be of no benefit to the plaintiff, and when too the plaintiff should have shown the materiality of the discovery which he sought.

2. The learned annotators upon Phillips on Evidence, consider that the answer to a bill of discovery, is not evidence, at the instance of the party making it, merely because it has been called for by his adversary, and assimilate it in this respect to a notice to produce papers. The complainant may use the defendant's answer or not, as he pleases; so the party who has given notice to produce, may, if he think proper, waive the production and make out his case independently. [See Withers v. Gillespy, 7 Serg't & R. Rep. 14; Blight v. Ashley, 1 Pet. C. C. Rep. 15, 22; Willings v. Consegna, Id. 302, 311; Hylton's lessee v. Brown, 1 Wash. C. C. Rep. 343; 3 Phil. Ev. C. & H's notes, 1206.] An answer in chancery, it is said, is not evidence for the party making it, in any respect, unless his antagonist choose to use it, even though it was called out on a bill of discovery for the purpose of the very suit at law in which it was offered. It is therefore en-

tirely in the election of the party calling for it, whether he will use it or not. [3 Phil. Ev. C. & H's notes 926.]

In Nourse v. Gregory, [3 Litt. Rep. 378,] the question was, whether a party calling for a discovery to be used on a trial at law, was bound by the answer, or could he adduce other evidence contradictory of it. The court said, " we are aware of no principle of law which either compels the plaintiff, after having obtained an answer to such a bill, to use it on the trial of the action at law, or if he should use it, that precludes him from controverting the correctness of its statements by other evidence. An answer to a bill of discovery is entitled to no higher consideration than an answer to any other description of bill, when given in evidence on the trial of an issue at law." And in Kinney v. Clarkson, [1 Johns. Rep. 385,] where the question was, whether if the party giving notice to produce a paper, decline to read it as evidence, it may be used by his adversary. The court said the notice to produce, and calling for the inspection ought to be considered as analogous to a bill for discovery, " where most certainly the answer is not evidence for the adverse party." In Phillips v. Thompson, [1 Johns. Ch. Rep. 141,] a cross bill was filed by the defendant for a discovery by the complainant, to be used on the hearing. The chancellor held, that the complainant could not use his answer to the bill of discovery in the cross suit, unless the defendant choose first to produce it in evidence. That the complainant could not testify for himself, unless at the instance, and on the call of the defendants; and it was for the defendant to determine whether the answer should be evidence in the cause. The law on this point rests upon a principle so familiar, and so universally acknowledged that we deem it unnecessary to add any thing to the citations already made. If it is not allowable for a party to read his answer to a bill of discovery, until the complainant in chancery has first introduced it, the same rule must apply to answers to interrogatories under the statute. The act itself very clearly shows, that it was intended to render a resort to equity unnecessary, and that the interrogatories are but the substitute for a bill. This conclusion sufficiently appears from what was said in Goodwin v. Wood, *supra*. [See also Phil. Ev. C. & H's notes, 926 to 932.]

3. Without undertaking to consider the materiality of the inquiry as to the indebtedness of the defendant in execution in the

posture in which the record presents this case, we will examine the propriety of the questions intended to show the notoriety of that fact. If it had been shown *prima facie*, that Ashley Parker was embarrassed, then it would have been allowable to prove that the fact was generally known in the neigborhood of the claimant, for the purpose of charging him with a knowledge of it. But the question, *whether indebted or not*, is one susceptible of more definite proof than mere reputation, or hearsay, and cannot be established by that grade of evidence. Such was the view of the law taken by this court, in Ward and Thompson v. Herndon, [5 Porter's Rep. 382.] In the State v. Cochran, [2 Dev. Rep. 63,] the prisoner was indicted for passing counterfeit bills knowing them to be such. To repel the *scienter* which was inferable from circumstances, it was proposed to prove that the prisoner was a man of fortune. He had recently removed from North Carolina to Georgia, and his counsel proposed to inquire of the sheriff " whether it was not generally understood and believed by the neighbors and acquaintances of the prisoner, that he was a monied man, and that he carried considerable money with him on his removal to Georgia." The Judge who delivered the opinion of the court remarked, that he thought common reputation the best and almost the only mode, by which such facts can be established. " They exist in reputation; for although proof may be had that a person had much property in his possession, yet when the question arises collaterally, recourse must be had to common reputation as to his being the owner, and not to the title deeds, and especially whether he is a monied man. Such a character consists of so many distinct facts, as how much had he; was it his—would not his necessities compel him to use it, and not keep it—could he soon replace it—what were his habits that of keeping and dealing in money, or realizing it—that I think it almost impossible otherwise to prove it. Besides it is of such a character, that it is almost impossible for it to become reputation, unless the fact be so." The case cited thus at length pushes the admission of common reputation quite as far, if not farther, than any other that has fallen under our notice, but it is distinguishable from the case at bar. There, the court places its conclusion upon the ground that the question arose collaterally, and the difficulty, if not impossibility, of establishing the fact by direct and positive proof. Here, the fact of indebtedness, if it existed, might be shown

by the evidence of witnesses who knew the fact, or by record or documentary evidence; and in this consists the great difference in the cases.

4. It is perfectly clear that the issue was so framed as to permit the claimant to show, that the slaves in question, were his property. The plaintiff affirmed that they were the property of Ashley Parker, and subject to the execution; both these allegations the claimants denied. It was not allowable to prove that the slaves were the property of some third person; the claimant would not be permitted to defeat the plaintiff by such evidence. The only means by which he could sustain the negative, after the plaintiff had made out a *prima facie* case, was to show that he was the lawful owner of the slaves. This view is decisive of the case, and it is apparent that the circuit court erred in admitting the claimant to read his answer to the interrogatories, when they had not been used as evidence by the plaintiff. The judgment is consequently reversed, and the cause remanded.

ORMOND, J.—The court, in my opinion, did not err in refusing to permit a witness to be asked whether it was not generally reported in the neighborhood where Ashley Parker resided, about the time of the sale of the slaves in controversy to L. Parker, that the former was much indebted or embarrassed. The evident design of this question, was to affect the purchase made by L. Parker, and to raise the inference that the sale was made with intent to delay and hinder the creditors of A. Parker.

The plain design of this evidence, was to authorise the jury to infer, that because it was generally reported in the neighborhood of A. Parker's residence, that he was in an embarrassed condition, that therefore, L. Parker knew it. I am not acquainted with any rule of evidence, which would have authorised the introduction of this testimony. The fact that L. Parker knew of A. Parker's embarrassments, might like any other fact have been infered from other facts proved to exist, with which the fact to be inferred had a necessary connection, or at least was found to be usually connected with it.

Positive proof cannot always be obtained, and the judgment of mankind, in the ordinary transactions of life, as well as in the jury box, are frequently based upon conclusions, or inferences from facts known, or supposed to exist. These presumptions or infer-

ences, Mr. Starkie says, are deduced by virtue of mere antecedent experience of the ordinary connection between the known and the presumed facts. [1 Starkie's Ev. 38, § 20.]

The test then, of the propriety of the inference attempted to be drawn in this case, is whether the fact to be presumed, is usually found to exist in connexion with the facts proved. When a report has general currency in a community, or neghborhood, every one residing there may know it, but that is not the usual consequence attending it, especially when it does not relate to a matter in which the whole community have an interest. It may, I think, be confidently stated that it is contrary to the experience of every one, that a report relating to the pecuniary concerns of an individual should be known by every individual of the community or neighborhood in which he lived. Indeed, the term *generally* known, implies that it was not *universally* known, and if not, it would be impossible to affirm, and illogical to presume, that any particular individual knew it.

There are other difficulties in the way—the facility with which a report of this character would obtain currency, would be entirely different in a large city and in a village—and again, in a small town and in the country. The character also of the report, would have a most material influence upon the speed with which it would be circulated. Again, in a thick settled country, how is the term neighbor to be defined? These, are I think, insurmountable objections to the rule, and demonstrate its want of legal sanction.

Independently of this objection, it does not appear from the evidence, that L. Parker was a resident of the neighborhood in which this report is said to have prevailed.

I am aware that in Ward and Thompson v Herndon, [5 Porter, 382,] this court held, that such evidence as I am now commenting on, was admissible to prove that a particular individual knew of the existence of a fact, and I am, in general, disposed to acquiesce in the decisions of this tribunal as binding on this court, as well as the inferior courts; but I consider decisions upon the admissibility of testimony, as forming an exception to the rule; not alone from their constant recurrence, but from their vast importance in the settlement of controversies and ascertainment of rights.

I consider the rule much more correctly laid down in Oden v.

Stubblefield, [4 Ala. Rep. 40] where it was held, that the husband could not be charged with knowledge of a fact because his wife knew it. There is, to be sure, a qualification of the decision which although it might impair its usefulness as a precedent, does not destroy it as a decision upon this point, as the general principle for which I contend is distinctly recognised.