191 So. 622

**HORTON et al. v. SPEARS et al.**

**6 Div. 488.**

Supreme Court of Alabama.

May 25, 1939.

Rehearing Denied June 8, 1939.

Rehearing Granted Oct. 12, 1939.

Further Rehearing Denied Nov. 2, 1939.

· Johnson & Busby, of Oneonta, and Griffith & Entrekin, of Cullman, for appellants.

R. G. Kelton, of Oneonta, for appellees.

BROWN, Justice.

This is a bill filed by the appellants as judgment creditors of the appellee, C. L. Spears, to enforce their judgment lien on cotton-seed and other property, alleged to be the property of the said judgment debtor. The appellee the United Cotton Communities of America, and others, were brought in as claimants of some interest in the property.

The cause went to final decree on pleading and proof, denying complainants relief and dismissing the bill. Upon the original consideration of the cause the decree was affirmed. Now upon further consideration of the cause on the application for rehearing we are persuaded that the bill was erroneously dismissed.

On first consideration much force was given to the alleged "membership agreement" made exhibit B to the defendants' answers to the discovery feature of the bill, which alleged agreement was not noted as evidence by the complainants and could not be offered by the defendants under well settled principles of equity law. Goodloe v. Dean, 81 Ala. 479, 8 So. 197; Reese v. Barker, 85 Ala. 474, 5 So. 305; Griffith et al. v. First Nat. Bank of Guntersville, 224 Ala. 296, 140 So. 359; The Branch Bank at Montgomery v. Parker, 5 Ala. 731; Saltmarsh v. Bower & Co. 22 Ala. 211; Southern Railway Co. v. Hayes et al., 183 Ala. 465, 62 So. 874;

468

Daughdrill v. Lockhart, 181 Ala. 338, 61 So. 802.

The observation in Goodloe v. Dean, supra, 81 Ala. 480, 8 So. 197 speaking of the Rule of Chancery Practice 77 (now 75), is pertinent to the first phase of the stated question: "Under this rule not even the answer of a defendant can be regarded as legal testimony, or considered, unless it was offered in evidence before the court, and noted by the register. Mahone v. Williams, 39 Ala. 202."

On the second phase of the stated question the following observations taken from the opinion of the court in The Branch Bank at Montgomery v. Parker, 5 Ala. 731, pages 735, 736, are enlightening:

"The learned annotators upon Phillips on Evidence, consider that the answer to a bill of discovery, is not evidence, at the instance of the party making it, merely because it has been called for by his adversary, and assimilate it in this respect to a notice to produce papers. The complainant may use the defendant's answer or not, as he pleases; so the party who has given notice to produce, may, if he think proper, waive the production and make out his case independently. See Withers v. Gillespy, 7 Serg. & R. [Pa. 10] 14; Blight v. Ashley, 1 Pet.C.C. 15, 22 (Fed.Cas. [No.] 1,541); Willings v. Consequa, 1 Pet.C.C. [301], 302, 311 (Fed.Cas. [No.] 17,767); Hylton's lessee v. Brown, 1 Wash.C.C. 343 (Fed.Cas.No.6,982); 3 Phil. Ev. C. & H's notes 1206. An answer in chancery, it is said, is not evidence for the party making it, in any respect, unless his antagonist choose to use it, even though it was called out on a bill of discovery for the purpose of the very suit at law in which it was offered. It is therefore entirely in the election of the party calling for it, whether he will use it or not. 3 Phil. Ev. C. & H's notes 926.

"In Nourse v. Gregory, 3 Litt. [Ky.] 378, the question was, whether a party calling for a discovery to be used on a trial at law, was bound by the answer, or could he adduce other evidence contradictory of it. The court said, 'we are aware of no principle of law which either compels the plaintiff, after having obtained an answer to such a bill, to use it on the trial of the action at law, or if he should use it, that precludes him from controverting the correctness of its statements by other evidence. An answer to a bill of discovery is entitled to no higher consideration than an answer to any other description of bill, when given in evidence on the trial of an issue at law.' And in Kenny v. Clarkson, 1 Johns. [N.Y.] 385 (3 Am.Dec. [336]) where the question was, whether if the party giving notice to produce a paper, decline to read it as evidence, it may be used by his adversary. The court said the notice to produce, and calling for the inspection ought to be considered as analogous to a bill for discovery, 'where most certainly the answer is not evidence for the adverse party.' In Phillips v. Thompson, 1 Johns. Ch. [N.Y., 131] 141, a cross bill was filed by the defendant for a discovery by the complainant, to be used on the hearing. The chancellor held, that the complainant could not use his answer to the bill of discovery in the cross suit, unless the defendant choose first to produce it in evidence. That the complainant could not testify for himself, unless at the instance, and on the call of the defendants; and it was for the defendant to determine whether the answer should be evidence in the cause. The law on this point rests upon a principle so familiar, and so universally acknowledged that we deem it unnecessary to add any thing to the citations already made."

Another fatal infirmity inhering in said exhibit B, the alleged "membership agreement," which destroys its evidentiary force, is that it is a mere skeleton or blank, and there is no proof of its existence as a contract except the statement of the defendant in its answer. We quote from the answer to the discovery feature of the bill, "(h) We are attaching hereto a *blank copy* of 'Participating Membership Seed Certificate', marked Exhibit 'A', *a blank copy of the* 'Membership Agreement', *and marked Exhibit 'B'*, and a blank copy of the 'First Year General Seed Contract,' marked Exhibit 'C', and a blank copy of 'Contract and Agreement', marked Exhibit 'D' to this answer." (Italics supplied.)

The court sustained a demurrer, incorporated in the answer, to the bill on the ground, among others, that the bill was not verified, and to meet that ruling the interrogatories calling for said answer were stricken from the bill by amendment.

For the reasons hereinabove stated the alleged "membership agreement" must be disregarded as evidence.

The bill avers:

"That the said C. L. Spears, at the time of the rendition of the said judgments and

at the time of the filing of said certificates of judgment hereinabove set out, as shown by exhibits A and B [to the bill], the said C. L. Spears was the owner and in the possession of the following described property, personal property which is located in Blount County, Alabama, and is subject to the lien of the said P. H. Horton and the said Virgil B. Fowler, viz.:

"979 sacks of Cotton seed now located in the N. C. Prickett Store located on 1st Ave. in the Town of Oneonta, Alabama, each sack weighing 100 pounds; 564 sacks cotton seed each weighing 100 pounds located in Blount Warehouse Company's warehouse; 80 sacks of cull cotton seed weighing on an average of 75 pounds each located in Blount Warehouse Company's warehouse in Oneonta, Alabama; also one 1937 Chevrolet Delux Coupe automobile, Motor #946135, serial #8GA07-13310."

At the time the bill was filed the property so described was in the custody of the sheriff, the executions issued on said judgments in favor of complainants having been levied on the same as the property of said judgment defendant.

The defendant, "The United Cotton Communities of America, a Corporation," was made a party as claimant, and in its answer to the bill, asserts title thereto as follows, and not otherwise:

"Answering Paragraph 4th of said Bill of Complaint, this respondent saith that at no time has C. L. Spears been in the possession of and holding the title or the owner of said cotton seed described in said paragraph, but avers that this respondent has ever since the purchase of said seed from the growers, or the pooling of said seed by the growers with this respondent, been in the possession of and holding the title to and the owner of said cotton seed; this respondent saith that in so far as it is advised the said C. L. Spears may have owned or been in the possession of the described automobile coupe described in said paragraph, but avers that it is informed that said coupe belonged to Melvin Spears at the time alleged in said paragraph of the filing of said certificates.

"Answering Paragraph 5th of said Bill of Complaint this respondent admits and avers that this respondent claims to own the legal title to the said cotton-seed, and hereby propounds it's claim thereto, and shows in support thereof, 'Exhibits A, B, C and D, to the answers to the interrogatories propounded to it.'"

Under the issue thus formed the burden of proof was cast on complainants to reasonably sustain the averments of the bill as to Spears' ownership of the property, for "the burden of proving a disputed fact rests, in all cases, upon the party affirming its existence, and claiming to derive right and benefit from it." Lehman Brothers v. McQueen, 65 Ala. 570, 572.

As to the Chevrolet Coupe, the evidence is without dispute that it was in the possession and daily use of the judgment defendant at the time it was levied on by the sheriff, and while said judgment defendant in his answer to the bill, to quote from said answer, "denies that the 1937 Chevrolet Delux Coupe Automobile, Motor #946135, serial #8GA07-13310 is subject to the lien of the said Virgil B. Fowler and Horton," he did not testify in respect to the ownership of the automobile, and the testimony brought out in respect to its ownership other than by Spears, was the barest of hearsay.

During the examination of Morton, the president of the claimant corporation, defendant counsel Mr. Kelton stated: "We admit in our answer that Mr. Spears, Mr. Morton and Mr. Byrum owes Mr. Horton the amount of that judgment as it was filed and recorded as alleged in the Bill of Complaint and further admit that in so far as Mr. Spears's personal property is concerned that he is entitled to levy and entitled to the execution of that property for the satisfaction of that judgment if the judgment is figured correctly." The deposition in which this admission was a part was duly noted as evidence.

The admission could refer to nothing but the automobile as to which there was no claim by any one, other than Spears, and in respect to the ownership of which there was no serious controversy.

Clearly under the well settled law the complainants met and carried the burden of proof as to the automobile. Ross v. Lawson, 105 Ala. 351, 353, 16 So. 890; Shahan v. Herzberg, 73 Ala. 59, 62; Jackson v. Bain, 74 Ala. 328, 330; Loeb & Brothers v. Manasses, 78 Ala. 555.

It is not permissible for a claimant to show title in a stranger unless he connects himself with such title. Wollner & Lowenstein v. Lehman, Durr & Co., 85 Ala. 274, 4 So. 643.

The evidence is without dispute that the cotton-seed in controversy were sacked and branded or labeled "C. L. Spears Upland Cotton Seed;" that they were produced in the season of 1937; that they came into possession and control of said judgment defendant; that he stored them in the warehouse in Oneonta in his own name and that the warehouse company issued warehouse receipts to him as owner. That in the latter part of August or early in September, 1937, Spears procured from the complainant Fowler, as agent of an insurance company, a policy of insurance, insuring said cotton-seed as the property of Spears; that Spears gave his note to Fowler in October, 1937, having failed to pay the premium, that Fowler's company required him, Fowler, to pay same, and the indebtedness thus created was merged into the judgment obtained by Fowler against Spears. That said Spears—from time to time—used said warehouse receipts in procuring personal loans and represented to Horton and to Fowler, and to the public generally, that he was the sole owner of said seed. That the cotton-seed were in the warehouse in the name of Spears when they were levied by the sheriff.

That the indebtedness due to complainant, Horton as alleged in the bill and admitted to be due by the defendants, was contracted on the 26th of April, 1937, and consisted of a loan to Spears, and at the time he procured the loan he represented to Horton that the cotton-seed, which was then being produced by the growers, from seed leased to them by Spears, under the arrangement with the growers, was the property of said Spears.

The contracts between Spears as party of the first part and the growers as party of the second part expressly stipulated: "Party of the second part understands and agrees that the title to the said leased seed and the title to all seed produced from the said leased seed is and shall remain the property of party of the first part, and party of the second part shall have no right to sell, lease, trade or give away or to allow to be sold, leased, traded, given away or otherwise disposed of any of the said leased seed or any of the seed produced from said leased seed."

This evidence made a prima facie case for the complainants, as to the cotton-seed, and shifted the burden to the sole claimant "United Cotton Growers of America, Incorporated," of going forward with the evidence to rebut the prima facie case of showing title in itself. Ross v. Lawson, supra.

The bill as last amended alleges that the said sole claimant claims to have obtained the legal title to the seed from said Spears by an alleged transfer, and challenges said transfer as being voluntary, fraudulent and void against the complainants as creditors of said Spears.

As before shown the said claimant admits that Spears was indebted to complainants as alleged in the bill—Horton's claim accruing April 26, 1937—for money loaned, and the evidence is without dispute that the sole claimant, of the cotton-seed, United Cotton Communities of America, was not incorporated until the 18th day of September, 1937. The evidence offered by it, considered in its lights most favorable to its claim, shows that the legal title and equitable ownership to the cotton-seed was in the judgment defendant, Spears, up until the 20th of September, 1937, when by a resolution of the board of directors of the corporation presided over and participated in by said Spears, the corporation undertook to take over the title to said cotton-seed, to quote from said resolution: "Under and by Contract, known as the general pure seed contract, which passes full title to the association, *now and as long as the association meets the approval of the Breeder C. L. Spears.*" (Italics supplied.)

Said contract which appears on pp. 97 to 99 of the record, was a contract between Spears and the claimant; executed on the 20th of September, 1938, or 1937. As written, the date was 1938, and thereafter the figure "7" was made over the "8."

For this alleged transfer of ownership and title, the evidence is without dispute that the claimant paid Spears nothing. Horton, the president of the corporation, after much quibbling, on cross-examination testified:

"Q. Since that time [the organization of the corporation] has the United Cotton Communities of America paid Mr. C. L. Spears anything for these seed? A. I don't think they have.

"Q. Been nothing paid to the farmers by United Cotton Communities or C. L. Spears either? A. No sir.

* * *

"Q. The United Cotton Communities of America has never paid Mr. Spears anything? A. Have not."

This testimony is corroborated by Robertson, another director.

The only stipulation in the alleged "pure seed contract", referred to in the resolution, touching the question of title is as follows: "That C. L. Spears, as breeder of cotton and other plants in cooperation with the United States Department of Agriculture, agrees to (a) Supply the Member Units of the United Cotton Communities of America, annually, (so long as such Unit operates as a cooperative Unit in maintaining the purity of said seed stock) on a profit-sharing basis, to the full capacity of his *production of such seed,* all such pure seed that he may produce at a price which shall be agreed upon from time to time between the contracting parties. (b) He further agrees that as his production of such seed may increase to give said Units and their members the advantage of all such increase in production." (Italics supplied.)

The stipulation is clearly consistent with Spears' ownership of said cotton-seed, and the resolution itself shows that he retained and reserved to himself the right to revoke and nullify the alleged transfer.

As before stated, the indebtedness to both complainants from Spears is admitted, and the evidence is without dispute that said debts antedated the alleged transfer of the seed by Spears to the complainant. The burden was therefore on the claimant, to quote from Robinson v. Moseley, 93 Ala. 70, 9 So. 372, "to show by appropriate averment, supported by strong and convincing evidence,—the more strong and convincing in view of the * * * relation existing between grantor and grantee,—that she [it] paid an adequate and valuable consideration for the conveyance. To the lifting of such burden, affirmative averment of the facts relied on as constituting the consideration is as essential as convincing proof of their existence. The laboring oar was upon the defendant, not simply to deny the negative averment that there was no consideration * * * but to state the affirmative fact that there was such consideration, in what it consisted, and how it was paid, and to support these averments by evidence." Robinson v. Moseley, 93 Ala. 70, 71, 72, 9 So. 372; Robinett et ux v. Murray, 219 Ala. 176, 121 So. 535.

The evidence being without dispute that the said sole claimant paid nothing for the alleged transfer of title, the transfer as to existing creditors is fraudulent and void, without regard to the question of benefits reserved. Crawford et al. v. Kirksey et al., 55 Ala. 282, 28 Am.Rep. 704; Robinett et ux v. Murray, supra; Naff v. Fairfield-American Nat. Bank, 231 Ala. 388, 165 So. 224; Harrison et al. v. American Agricultural Chemical Co., 220 Ala. 695, 127 So. 513; Drain v. F. S. Royster Guano Co., 231 Ala. 422, 165 So. 239.

The reservation of benefit shown by the resolution of the acceptance of the alleged transfer is sufficient to avoid the transfer. Morton Hardware Co. v. Barranco et al., 233 Ala. 346, 172 So. 109.

We are, therefore, after mature consideration of the case, of the opinion that the complainants are entitled to relief, and a decree will be here entered granting complainants relief, cancelling and annulling the alleged transfer of title of the cotton-seed of Spears to the appellees, United Cotton Communities of America, and ordering the sheriff of Blount County to proceed with a sale of the property under said executions. The cause is remanded to the Circuit Court for further appropriate orders, not inconsistent herewith, to enforce the decree. Let the appellees pay the costs of the appeal.

Reversed, rendered and remanded.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.