The petitioner-plaintiff, Winston Guthrie, D.M.D., sued Blue Cross and Blue Shield of Alabama for defamation, malicious defamation, and tortious interference with contractual relations. The trial court entered summary judgment in favor of Blue Cross on all three claims. On Dr. Guthrie's appeal, the Court of Civil Appeals reversed the summary judgment and remanded. Guthrie v.Blue Cross Blue Shield of Alabama, [Ms. 2970472, August 28, 1998] 773 So.2d 471 (Ala.Civ.App. 1998). On certiorari review pursuant to the petition of Blue Cross, we reverse the judgment of the Court of Civil Appeals and render a judgment for the defendant Blue Cross.
While the opinion issued by the Court of Civil Appeals presents the facts in detail, the operative facts material to Dr. Guthrie's defamation claim are, in essence, simply that Blue Cross wrote a letter to each of two of its own insureds and Dr. Guthrie's patients, Reasoner and Cantrell, explaining to the particular patient that Blue Cross was denying payment for certain procedures performed on the patient on the ground that the procedures were outside the scope of Dr. Guthrie's license as a dentist; and that Blue Cross wrote each of those letters in response to a letter from that particular insured patient asking why Blue Cross had denied payment. After Dr. Guthrie sued Blue Cross on the theory that each of these two letters defamed him, Blue Cross moved for summary judgment on the ground of qualified privilege — that is, the defense that the qualified privilege of Blue Cross to write each letter prevented the letters from being actionable.
Over the last 150 years some confused and anomalous language has developed in our cases on defamation and conditional privilege. We will clarify and restate the law.
At the outset we note that some cases refer to conditionalprivilege, see, e.g., Tidwell v. Winn-Dixie, Inc., 502 So.2d 747
(Ala. 1987), and Webster v. Byrd, 494 So.2d 31, 36 (Ala. 1986), and others refer to qualified privilege, see, e.g., Mead Corp. v.Hicks, 448 So.2d 308 (Ala. 1983), and Ripps v. Herrington, 241 Ala. 209,1 So.2d 899 (1941). Indeed the two terms have been used interchangeably. Gore v. Health-Tex, Inc., 567 So.2d 1307 (Ala. 1990); Barnett v. Mobile County Personnel Bd., 536 So.2d 46, 53
(1988); Browning v. Birmingham News, 348 So.2d 455, 458 (Ala. 1977); Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117
(Ala. 1977); Smith Bros. Co. v. Agee Co., 178 Ala. 627,59 So. 647 (1912). However, we will henceforth use the term qualifiedprivilege, because, as we discuss and hold, *Page 478 
the defense is not subject to any condition but is simply subject to the qualification, or limitation, that it suffices against only claims for innocent or mistaken defamation and not against claims for defamation committed with actual malice.
Language in some cases implies that good faith and the absence of actual malice are essential elements of the defense of qualified privilege. Clark v. America's First Credit Union,585 So.2d 1367, 1370 (Ala. 1991); Gore, 567 So.2d at 1308; AtkinsFord Sales, Inc. v. Royster, 560 So.2d 197, 200 (Ala. 1990);Reynolds Metals Co. v. Mays, 547 So.2d 518, 524 (Ala. 1989);Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1094 (Ala. 1988); Kirby v. Williamson Oil Co., 510 So.2d 176, 179 (Ala. 1987); Tidwell, 502 So.2d at 748; WKRG-TV, Inc. v. Wiley,495 So.2d 617, 619 (Ala. 1986); Webster, 494 So.2d at 36; Montgomery v.Big B, Inc., 460 So.2d 1286, 1288 (Ala. 1984); Mead Corp., 448 So.2d at 312; Fulton v. Advertiser Co., 388 So.2d 533, 537 (Ala. 1980); Browning, 348 So.2d at 458; Willis, 336 So.2d at 1120;Berry v. City of New York Ins. Co., 210 Ala. 369, 371, 98 So. 290
(1923). Other cases hold or imply that bad faith and actual malice are essential elements of the only variety of defamation
that will prevail over a defense of qualified privilege. Barnett, 536 So.2d at 53, and Nelson, 534 So.2d at 1095. The significance of this conflict is that the burden of proof on faith (good or bad) and the absence or existence of actual malice would seem to be upon the party whose position includes them as essential elements, for generally a plaintiff bears the burden of proving the essential elements of his claims, King v. Aird,251 Ala. 613, 38 So.2d 883 (1949), United States Cast Iron Pipe Foundry Co. v. Williams, 213 Ala. 115, 104 So. 28 (1925), andMetropolitan Life Ins. Co. v. Brown, 27 Ala. App. 602,177 So. 178 (1937), and the defendant bears the burden of proving the essential elements of his affirmative defenses, Aird, supra,Horton v. Spears, 238 Ala. 464, 191 So. 622 (1939), United StatesCast Iron Pipe Foundry Co. v. Williams, 213 Ala. 115, 104 So. 28
(1925), and APJI 8.01 (2d ed. 1993). One case even holds that, while the defendant asserting qualified privilege must plead theabsence of actual malice, the plaintiff bears the burden ofproving the existence of actual malice. Kenney v. Gurley,208 Ala. 623, 95 So. 34 (1923).
Our first clarification prompted by these cases is that the matters of faith and actual malice are not two separate essential elements. Rather, the term good faith was intended as the opposite of the term actual malice. The term in good faith means the same as the term without actual malice. Smith Bros., supra. Whenever these two terms are used conjunctively, one is redundant. Likewise the term in bad faith means the same as the term withactual malice. Barnett and Nelson, supra. Whenever these two terms are used conjunctively, one is redundant.
Our next clarification and restatement is that the plaintiff must plead defamation with actual malice and bears the burden of proving defamation with actual malice to prevail against a defense of qualified privilege, Fulton, Browning, Willis, and Kenney,supra. See also O'Barr v. Feist, 292 Ala. 440, 296 So.2d 152
(1974); and the defendant need not plead good faith (the absence of actual malice) and does not bear the burden of proving good faith to establish the defense of qualified privilege. To the extent that Kenney, supra, requires the defendant to plead the absence of actual malice, it is overruled. Rather, to establish this affirmative defense, the defendant need only plead and prove the elements as stated in the following authorities.
 "`[N]otwithstanding the tendency of the words to defame or disparage the plaintiff, they were . . . spoken or published . . . in the . . . discharge of some legal or moral duty to society, or even in the fair and honest prosecution of the rights of the party himself, or the protection of his interests. . . .' 2 Starkie Ev. 863."
Easley v. Moss, 9 Ala. 266, 268 (1846).
 "`Where a party makes a communication, and such communication is prompted *Page 479 
by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged. . . . The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is . . . moral in its nature. . . .'"
Berry v. City of New York Ins. Co., 210 Ala. 369, 371, 98 So. 290
(1923). See also Clark v. America's First Credit Union,585 So.2d 1367, 1370 (Ala. 1991); Gore v. Health-Tex, Inc.,567 So.2d 1307, 1308 (Ala. 1990); Atkins Ford Sales, Inc. v. Royster,560 So.2d 197, 200 (Ala. 1990); Reynolds Metals Co. v. Mays,547 So.2d 518, 524 (Ala. 1989); Nelson v. Lapeyrouse Grain Corp.,534 So.2d 1085 at 1094 (Ala. 1988); Kirby v. Williamson Oil Co.,510 So.2d 176, 179 (Ala. 1987); Tidwell v. Winn-Dixie, Inc.,502 So.2d 747, 748 (Ala. 1987); WKRG-TV, Inc. v. Wiley, 495 So.2d 617, 619
(Ala. 1986); Webster v. Byrd, 494 So.2d 31, 36 (Ala. 1986);Montgomery v. Big B, Inc., 460 So.2d 1286, 1288 (Ala. 984); MeadCorp. v. Hicks, 448 So.2d 308, 312 (Ala. 1983); Fulton v. AdvertiserCo., 388 So.2d 533, 537 (Ala. 1980); Browning v. Birmingham News,348 So.2d 455, 458 (Ala. 1977); Willis v. Demopolis Nursing Home,Inc., 336 So.2d 1117, 1120 (Ala. 1977).
 "Where the defendant acted in the discharge of any public or private duty, whether legal or moral, which the ordinary exigencies of society, or his own private interest, or even that of another, called upon him to perform, the law simply . . . gives protection to the defendant. . . ."
APJI 23.12 (2d ed. 1993). Some references to good faith and, alternatively, to the absence of actual malice on the part of the defendant have been eliminated from these quotations purposely in order to leave only the elements to be pleaded and proved by the defendant asserting the affirmative defense of qualified privilege.
The affirmative defense of qualified privilege so pleaded and proved will defeat a claim of innocent or mistaken defamation, because this defense negates the malice implied by the mere falsity of a defamatory statement. Lawson v. Hicks, 38 Ala. 279,285 (1862), and APJI 23.12, supra. The only variety of defamation not subject to the defense of qualified privilege is defamation committed with actual malice (as distinguished from implied malice). See, e.g., Easley and APJI 23.12, supra. A plaintiff cannot prevail against an established defense of qualified privilege unless he has pleaded and proved defamation committed with actual malice. Fulton, Browning, Willis, O'Barr, and Kenney,supra.
In the case presently before us, we will assume, for the purpose of analysis only, that the letters by Blue Cross to its insureds, Dr. Guthrie's patients, Reasoner and Cantrell, are defamatory. The writing and delivery of the letters nonetheless meets each of two independently sufficient criteria for qualified privilege. The record establishes explicitly and implicitly that Blue Cross owed each of its insureds an explanation for the denial of payment for the particular procedures and, likewise, that Blue Cross had an interest in the explanations and each of its insureds had a corresponding interest. Thus the qualified-privilege defense asserted by Blue Cross in its motion for summary judgment is factually established.
As we have explained, qualified privilege is a complete defense to all defamation except that committed with actual malice. The record does not contain substantial evidence that Blue Cross wrote and delivered the letters with actual malice. Therefore, summary judgment in favor of Blue Cross on the defamation claims was not erroneous.
We will now address Dr. Guthrie's claims against Blue Cross for intentional *Page 480 
interference with his contractual relations with Reasoner and Cantrell. Dr. Guthrie claimed that the same letters that grounded his defamation claims further constituted tortious interference in his dentist-patient contractual relations with Reasoner and Cantrell. Before Blue Cross wrote the letters to Reasoner and Cantrell, however, Dr. Guthrie had written Blue Cross a letter which stated, in pertinent part:
 "In response to your letter of 28 February 95, it has always been my position that patients should have full access to all information concerning their health and contractual benefits. . . . I trust that you will choose to exercise your legal obligation . . . and fully disclose to my patients, in writing, the rationale for your decision to deny payment of my services."
(Emphasis in original.) Dr. Guthrie admitted in his deposition that, before he wrote this letter, he had established a practice of informing his patients that "you need to be aware that Blue Cross, I believe wrongfully, but nevertheless that Blue Cross has taken the position that these services may not be covered because they are outside the scope of dental practice."
For two independently sufficient reasons, Dr. Guthrie's claims of tortious interference were subject to the summary judgment entered by the trial court. First, Dr. Guthrie can hardly claim that, after he invited Blue Cross to write the letters to his patients, Blue Cross interfered by writing the letters to his patients. The essential elements of a tort include a breach of a duty imposed by law. If, arguendo only, Blue Cross ever owed Dr. Guthrie a duty not to write the letters, that duty was excused by Dr. Guthrie's inviting Blue Cross to write the letters.
Second, while Dr. Guthrie charged Blue Cross with interfering with his contractual relations with his patients Reasoner and Cantrell, Blue Cross was, itself, a party to these same contractual relations. The record establishes both explicitly and implicitly that Dr. Guthrie and his patients contracted together in reliance on the contractual obligation of Blue Cross to pay for dental services covered by the policy between Blue Cross and the patients. Interdependent contractual relations existed among Dr. Guthrie, his patients, and Blue Cross. This contractual situation invokes the rule that a party to a contract cannot be charged with interfering with that contract. Bama Budweiser of Montgomery,Inc. v. Anheuser-Busch, Inc., 611 So.2d 238 (Ala. 1992), andLolley v. Howell, 504 So.2d 253 (Ala. 1987). While the rights and duties between different sets of parties to a multiparty contract may differ and the respective interests of the parties may compete, the performance of one of the duties or the pursuit of one of the competing interests cannot be validly branded as interference. A holding (as we do not hold) that a medical insurer's explaining a claim denial to its own insured could constitute a tortious interference in the contractual relations between the insured and his or her medical provider, would so unjustly prejudice the rights of insureds throughout Alabama that such a holding could not be a true tenet of our common law. Accordingly, we specifically hold that a medical insurer's explaining a claim denial to its insured cannot constitute a tortious interference in the contractual relations between the insured and his or her medical provider. Thus the trial court did not err in entering summary judgment in favor of Blue Cross on Dr. Guthrie's claims of tortious interference.
Because the summary judgment was appropriate on all the claims for defamation and tortious interference, the Court of Civil Appeals erred in reversing the trial court. Accordingly, we reverse the judgment of the Court of Civil Appeals and render a judgment in favor of the defendant-petitioner Blue Cross.
REVERSED AND JUDGMENT RENDERED. *Page 481 
Hooper, C.J., and Houston, Cook, See, Lyons, Brown, and England, JJ., concur.
Maddox, J., concurs in the result.