DONALDSON, Judge.
Allied Company of the Wiregrass, Inc., d/b/a Allied Fence Company (“Allied”), appeals from a summary judgment entered by the Houston Circuit Court (“the trial court”) in favor of the City of Dothan (“the City”), Anne Rumble, Kim Meeker, and Earnest Stokes (hereinafter referred to collectively as “the defendants”) on Allied’s claims against the defendants. Allied was contractually obligated to deliver “powder coated” fence-posts and rails to the City. The parties dispute whether the fence *806 posts and rails delivered by Allied complied with the contractual requirements. Because we find the pertinent contractual term is ambiguous and because the resolution of the meaning of the term “powder coated” requires a determination of a disputed fact, we reverse the summary judgment on Allied’s breach-of-contract claim against the City; however, we affirm the summary judgment on Allied’s intentional-interference-with-a-contractual-relationship.
claims against Rumble, Meeker, and Stokes.
In 2007, the City requested bids on a contract to install fencing for three baseball fields in Dothan. The bid package prepared and distributed by the City contained specifications for the materials to be used in.the construction of the fencing. The bid package specified, in pertinent' part: “Chain link fabric shall be nine (9) gauge two inch (2") galvanized steel ‘core’ mesh with a. class 2B fusion bonded .vinyl coating to provide an eight (8) gauge thickness (black in color) with matching (black) powder coated HYP4Q or SS40 rails and posts.” All portions of the bid package calling for posts or rails specified “HYP40 or SS40 black powder coated galvanized steel pipe.” The bid package made one allowance that “[a]s long as the fabric-ties have a nine (9) gauge- steel core a black vinyl coated tie may be substituted for the powder coated one.”
Allied received the bid package and sent it to Stephens Pipe & Steel, LLC (“Stephens”), a fence-material supplier, to obtain a quote for the materials so that Allied could bid on the project. Shaun Pierce, a sales representative for Stephens, reviewed'the bid specifications and quoted a price to supply the materials to Allied. Allied used the price quoted by Stephens in calculating its bid for the City’s contract. On June 12, 2007, Allied was awarded a contract, which incorporated the bid specifications, by the City to erect fencing at two of the baseball fields. Allied ordered the materials from Stephens, and the materials were delivered to the site of the project. Stephens certified to Allied that the delivered materials met the bid specifications. Allied sent an invoice to the City on June 28, 2007, for the price of the materials that was equal to the amount it had been billed by Stephens.
After the materials were delivered to the project site, Meeker, the City’s assistant director of leisure services, sent a letter to Allied on June 29, 2007, stating:
“Ernest Stokes, Chief Civil Engineer for the City of Dothan, and I have reviewed the description of the Stephens’ Pipe products that have been delivered to our job site, as well as inspecting the actual product. We have determined that the pipe does not meet, our specifications for ‘... SS40 powder coated galvanized steel pipe.’ Therefore we would direct you to not begin construction until you can obtain the pipe that does meet our specifications.”
In .response, Allied presented the City with a letter from Stephens certifying the “Vinyl Steel Pipe Framework” met the following specifications: “RR-F-191/3D Grade B * ASTM F-1043, Group 1C, Par 7.3 Optional Color Coating * AASHTO M181-98 Fused/Bond'PVC.”
On August 2, 2007, Rumble, the City’s Director of Leisure Services, sent Allied another letter, stating, in pertinent part:
“On July'26, 2007, I notified you in writing of the City’s intention to dispose of the fencing materials delivered by your firm to the [project site] unless I received information from you within seven days concerning a method to return the product.
“At your request, Mr. Kim Meeker, Mr, Ernie Stokes andT met with you on August 1 at your office. At that time, you indicated that returning the materi *807 al was not an acceptable solution to this matter. I have since received a copy of your fax to City Manager Mike West confirming that neither you nor the manufacturer intends to remove the materials.”
Thereafter, the City rescinded,the Allied contract and awarded it to the next-lowest-bidding contractor.
On August 20, 20.07, Allied filed a complaint in the trial court against the defendants, Stephens, and City employee Darryl Matthews. Allied’s complaint alleged several claims of relief, including breach of contract against the City and interference with a contractual- relationship ' against Meeker, Rumble, and Stokes.
The trial court entered separate orders dismissing Allied’s claims against Stephens and Matthews. Allied has not appealed from those orders.
The defendants filed a motion seeking a summary judgment on all of- Allied’s claims. The defendants supported -that motion with excerpts from the deposition testimony of Allied’s president, Kelvin Andrews, a copy of Allied’s complaint, several documents from the bidding process, copies of correspondence between the City and Stephens, and an affidavit executed’by Meeker. Allied filed a response in opposition to the defendants’ motion for a summary judgment and attached documents from the bidding process and the depositions of Pierce, the sales representative for Stephens, and Ted Eysenbach, the general manager of Stephens.
On September 8, 2014, the trial court entered a summary judgment in favor of the defendants:
“After hearing and consideration, [the City’s] motion for summary judgment is GRANTED. The issue revolves around a ‘powder coating’ on a fence purchased by the [City]. The [City] is not. in the fence business. However, [Allied] is in the fence business. [Allied’s] supplier and manufacturer of the fence at issue is Stephens Pipe & Stéeh Representatives of Stephens testified-that there are different types of ‘powder •coating’ and ■rather than contacting [Allied] and/or the City of Dothan they decided on the type of ‘powder coating’ to use. Accordingly, [Allied’s] claim, if there is one, is against Stephens Pipe & Steel for unilaterally altering a contract term that Stephens, due to its superior knowledge and expertise* believed was vague,, ambiguous or non-specific. Further, sum;mary judgment is GRANTED against [sic] the individual defendants on all grounds alleged in their motion.”
Allied filed a,postjudgment motion seeking to have the summary judgment set aside, which the trial court denied. Allied filed a timely notice of appeal.
“This Court’s review of.;a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same- standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as-a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski 899 So.2d 949, 952-53 (Ala.2004). In making such a determination; we must review, the evidence in the light most favorable to the. nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there, is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial- evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. . ‘[Substantial evidence is evidence of such weight and *808 quality that fair-minded persons in the exercise of impartial judgment - can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
Before the trial court, the City argued that the parties did not have a “meeting of the minds” on an essential portion of the contract. The City abandoned that argument on appeal and concedes that there was a valid contract between the parties.
Allied first argues that a genuine issue of material fact exists as to whether the materials supplied by Allied met the specifications for the project. Allied argues that “the materials supplied by [Aided] did conform with the contract terms issued by the City even though the City employees said they had actually wanted something different.” The City argues in return that “[t]here was sufficient evidence presented to support a finding that the specifications were not ambiguous and that Allied breached the contract by supplying non-conforming goods.” Thus, the parties agree on appeal that there was a valid contract, but they offer conflicting interpretations as tp the meaning of the term “powder coated” as it applies to the specifications in the contract.
In opposition to the City’s motion for a summary judgment, Allied submitted deposition testimony from Pierce and Ey-senbach indicating that the materials supplied by Stephens to Allied for the project conformed to the City’s bid specifications incorporated into the contract. Pierce testified that three different types of “powder coating” exist for the kinds of applications involved in the project and that the vinyl coating on the-posts and rails supplied to Allied met the contract specifications requiring “powder coated” materials. Pierce stated:
“[Counsel for Allied] — Okay. So did what you [sent], did it fall within or without — or outside the specifications asked for in the specs by the City of Dothan?
“[Pierce] — It fell — it fell 100 percent within, because [Allied] did not differentiate which powder process [it] wanted.”
Allied also submitted deposition testimony from Eysenbach indicating that the materials supplied “absolutely” met the specifications requiring “powder coated” pipe:
“[Co.unsel for Allied] — Okay. So there’s no question in your mind, that what you sent meets the specifications that the City of Dothan has?
“[Eysenbach] — It is so open-ended that it was left up to us and/or the customer
[[Image here]]
[[Image here]]
“[Eysenbach] — If they had wanted poly pipe, it should have said HYP40 or SS40 electrostatically applied, using a polyester resin, is what it should have said. “[Counsel for Allied] — And that’s not what it says?
“[Eysenbach] — It says powder coated.”
The trial court’s summary judgment recognized this factual dispute: “Representatives of Stephens testified that there are different types of ‘powder coating’, and rather than contacting [Allied] and/or the City of Dothan they decided on the type of ‘powder coating’ to use.”
“Alfa Life Ins. Corp. v. Johnson, 822 So.2d 400 (Ala.2001), provides a thorough -explanation of the steps to be employed by the trial court:
“ ‘When a trial court is found with a contract issue, it is important for the trial court to determine as soon as practicable the “threshold issue” whether the contract is ambiguous. If the trial court determines that there is no ambiguity, it must “ ‘determine *809 the force and effect of the terras of the contract as a matter of law.’ ” Cherokee Farms, Inc. [v. Fireman’s Fund Ins. Co.], 526 So.2d [871], 873 [ (Ala.1988) ], quoting Wigington v. Hill-Soberg Co., 896 So.2d 97, 98 (Ala.1981). However, if the trial court finds the contract to be ambiguous, it “must employ established rules of contract construction to resolve the ambiguity.” Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala.1997). If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise:
‘““If one must go beyond the four comers of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity.”
“‘Id. at 949. Where factual issues arise, the resolution, of the ambiguity becomes a task for the jury. McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853 (Ala.1991).’
“822 So.2d at 404-05 (emphasis added). In short, a court is to evaluate the contract on its face and apply rules of contract construction in an effort to resolve ambiguities before submitting the case to a jury. See; e.g., Boykin v. Bank of Mobile, 72 Ala. 262, 269 (1882); Lutz v. Van Heynigen Brokerage Co., 199 Ala. 620, 629, 75 So. 284, 288 (1917); Air Conditioning Eng’rs v. Small, 259 Ala. 171, 176, 65 So.2d 698, 703 (1953).”
Vesta Fire Ins. Corp. v. Liberty Nat'l Life Ins. Co., 893 So.2d 395, 403-04 (Ala.Civ.App.2003). The evidence and theories presented by the parties indicate that the term “powder coated” is- reasonably susceptible of more than one meaning and therefore is- ambiguous. -“[Ójnce a court determines that an instrument is ambiguous or uncertain in any respect, it becomes a question for the factfinder to determine the true meaning of the contract.” Ex parte Harris, 837 So.2d 283, 290 (Ala.2002) (citing Shadrick v. Johnston, 571 So.2d 1008, 1013 (Ala.1990)). In Tucker v. Cullman-Jefferson Counties Gas District, 864 So.2d 317 (Ala.2003), our supreme court held that the meaning of the term “discount” as well as the meaning of other terms in a contract were ambiguous when considered in the context of a breach-of-contract claim. The ambiguity presented a “question for the trier of fact as to the proper interpretation and application of .those terms,” prohibiting the entry of summary judgment.. Id. at 323. Likewise, in this case, each party argues for a meaning of the term “ppwder coated,” thus creating an ambiguity or factual, dispute that must be resolved. Therefore, the summary judgment in favor of the City as to Alied’s breach-of-contract claim is reversed.
Allied also argues that the trial court erred in entering a summary judgment in favor of Meeker, Rumble, and Stokes on Alied’s claims of interference with a contractual relationship.
“ ‘After proving the existence of a contract, it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a “third party,” i.e., a “stranger” to the. contract with which the defendant allegedly interfered.’ Atlanta Market Ctr. Management Co. v. McLane, 269, Ga. 604, 608, 503 S.E.2d 278, 282 (1998); see also Alcazar Amusement Co. v. Mudd & Colley Amusement Co., 204 Ala. 509, 86 So. 209 (1920). This is so, because ‘a party to a contract cannot, as a matter of law, be liable for tortious interference with the contract.’ Lolley v. Howell, 504 So.2d 253, 255 (Ala.1987):
*810 BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So.2d 203, 212 (Ala.2001). Allied concedes that Meeker, Rumble, and Stokes are all employees of the City and that a valid contract existed. However, Allied argues that “employment with the City, alone, did not grant them ‘agency’ for purposes of avoiding the claim they interfered with the contract” and that “Alabama courts have not defined the term ‘stranger’ as it relates to the tort of interference with contract.” Our supreme court has held:
“Clearly, a party to a contract or a business relationship cannot be liable for tortious interference with that contract or business relationship. Colonial Bank v. Patterson, 788 So.2d 134, 137 (Ala.2000); Ex parte Blue Cross & Blue Shield, Inc., 773 So.2d 475, 480 (Ala.2000). Parsons [v. Aaron, 849 So.2d 932 (Ala.2002),] makes it clear that a plaintiff asserting a tortious-interference claim bears the burden of proving that the defendant is a ‘third party or ‘stranger’ to the contract or business relationship with which the defendant allegedly interfered. See also BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So.2d 203, 212 (Ala.2001). A defendant is a party in interest to a relationship if the defendant has any beneficial or economic interest in, or control over, that relationship. Parsons, 849 So.2d at 937; BellSouth, 814 So.2d at 214; Colonial Bank, 788 So.2d at 139; Blue Cross, 773 So.2d at 480.”
Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1154 (Ala.2003). There is no dispute that Meeker, Rumble, and Stokes were employees of the City and exercised control over Allied’s contractual relationship with the City, x.e., they were all- involved in determining that the materials were noncomplying and were the parties with whom Allied communicated during all stages of the dispute. Further, Allied bore the burden of proving that Meeker, Rumble, and Stokes were “third parties” or “strangers” to the relationship. Allied presented no evidence to show that Meeker, Rumble, and Stokes were third parties, much' less strangers, to its contractual relationship with the City.
For the foregoing reasons, we affirm the summary judgment entered in favor of Rumble, Meeker, and Stokes on Allied’s intentional-interference claims. We reverse the trial court’s summary judgment in favor of the City as to Allied’s claim alleging breach of contract, and we remand the case for the trial court to conduct further proceedings consistent with this opinion. We pretermit discussion of Allied’s remaining issues.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.