38 So.2d 883

### KING v. AIRD.
### 6 Div. 793.

Supreme Court of Alabama.

Feb. 17, 1949.

Crampton Harris, Arthur D. Shores, and Harris & Brown, all of Birmingham, for appellant.

Jas. W. Aird and Wm. B. McCullough, both of Birmingham, for appellee.

STAKELY, Justice.

This is a contest of a will tried before a jury in the Probate Court of Jefferson County. There was a verdict for the proponent and in favor of the will and a judgment probating the will. A motion to set aside the verdict and judgment was made by the contestant. The court overruled the motion. This appeal is from the ruling on the motion.

The grounds of the contest were the mental incapacity of William Nesbitt to make a will and the undue influence exercised over William Nesbitt on the part of Herbert Stone and Aaron Stone, beneficiaries mentioned in the will, in conjunction with agents and attorneys of the beneficiaries and legatees mentioned in the will.

We have examined the testimony in the case with great care and while it is not practical or necessary to set out all of the evidence in accordance with our rule (§ 66, Title 13, Code of 1940, Kahalley v. Kahalley, 248 Ala. 624, 28 So.2d 792; Beasley v. Ross, 234 Ala. 335, 174 So. 764), enough of the evidence and its tendencies should be summarized to give the reader an understanding of the general background of the case.

William Nesbitt, a negro man in his late sixties, was admitted to St. Vincent's Hospital on January 4, 1948. According to his doctor "he had uraemia and was very debilitate." He died February 15, 1948,

while still in the hospital. The alleged will was executed in the hospital on January 7, 1948.

William Nesbitt married twice. Willie Margaret King (the contestant) was a child of the first marriage. She was the only child of William Nesbitt. Both wives were dead at the time of his death, the second wife, Lucy, having died in 1941. Willie Margaret King lives with her husband in New York City. After her mother's death Willie Margaret King lived about a year in Birmingham with her father and his second wife, Lucy, and then went to her grandparents in Atlanta. She was at that time about 14 or 15 years old. She married in Atlanta and moved to New York City in 1926. After she left Birmingham she seldom saw her father. While she came to Birmingham to her father's funeral she did not come to see him during his last illness. The last time she saw him in Birmingham was in 1938 when he was sick and she stopped off to see him on her return from a trip to Hot Springs. At that time she stayed in Birmingham one or two days. She had also come to see him in 1937. After 1938 she saw her father one more time before he died and that was when he and Aaron Stone went to New York City to see about his property there.

William Nesbitt owned two pieces of real estate. These two pieces of real estate constituted substantially all of his property. One piece of real estate was an apartment house located in New York City, worth about $18,000 and renting for $105 per month. This property in New York City he left in his will to his daughter and her two children, share and share alike. William Nesbitt acquired this property by inheritance from his deceased sister. His daughter Willie Margaret King was the administratrix of that estate and tendencies of the evidence showed that he was dissatisfied with his daughter's handling of the estate. At about that time she took a trip to Europe and tendencies of the evidence further showed that he claimed that she had used funds of the estate to make the trip.

The other piece of real estate was a tract of land of about 9 or 10 acres situated on the west side of Center Street in Titusville in Jefferson County, worth about $10,000. William Nesbitt lived on this property in a little shack. The will describes that part of the tract on which is situated the shack, the cow barn and cow lot and leaves this part of the tract to Adeline Tate. The balance of the tract is left in the will to Herbert Nelson Stone, his wife Aaron Mitchell Stone and William B. McCullough, share and share alike. Household furniture, personal belongings, clothing, etc., were also left to Adeline Tate. The will nominates and appoints James W. Aird (the proponent) as executor of the will.

William W. Nesbitt married his second wife Lucy in 1929. Aaron Stone was a niece of Lucy. When Lucy died in 1941 Aaron Stone and her husband went to live with William W. Nesbitt, at his request, because he did not have anyone to look after him. They lived with him a year when they had to leave on account of the illness of her mother, whom she then had to look after. She went to see William Nesbitt often after she left his home and took the trip with him to New York City in 1943, as aforesaid. They did not stay with Margaret King while in New York City. When William Nesbitt became ill the latter part of 1947, she went to see him every day because he depended on her and needed her help. William Nesbitt on account of his illness went to stay with Aaron Stone and her husband on December 1, 1947, and stayed with them until he went to the hospital on January 4, 1948. She and her husband were very attentive to him while he was at the hospital and went to see him every day.

When Aaron Stone left the home of William Nesbitt, Adeline Tate, who lived nearby became his housekeeper. She kept house for him and looked after him for about 7 or 8 years until he went to stay with Aaron Stone and husband prior to his entry into the hospital. According to her the property left to her in the will was the property which William Nesbitt had promised to leave to her. She testified that Mr. McCullough and Mr. Aird came out and measured the lot left to her while William Nesbitt was in the hospital.

William B. McCullough, an attorney, had been a friend and counsellor of William Nesbitt from 1931 until the time of his death in 1948. During all of this period he had handled all of the affairs of William Nesbitt. Tendencies of the evidence showed that their relationship was cordial and friendly and that William Nesbitt had told him over a period of time that he was going to give him part of his acreage in Birmingham. Tendencies of the evidence further showed that William B. McCullough was called one Saturday evening, January 3rd, to come to the home of Herbert and Aaron Stone to talk to William Nesbitt. At that time William Nesbitt discussed in detail how he wanted to dispose of his property. Accordingly he prepared the first draft of the will which he read over and discussed in detail with William Nesbitt at the hospital. The first draft was changed in accordance with instructions of William Nesbitt. One of these changes was that his New York property should be left to Willie Margaret King and her two children instead of only to Willie Margaret King. Another change that William Nesbitt wanted made was that he wanted the property which was to go to Adeline Tate measured off in order to be sure that the little shack, cow barn and cow lot would be included in the gift to her.

Assignment I. The court was not in error in overruling the motion for a new trial. There was ample evidence, which if believed, justified the verdict of the jury in finding for the proponent and for the will. We cannot affirm that the preponderance of the evidence is so decided as to convince us clearly that the verdict is wrong and unjust. Gulf States Creosoting Co. v. Jones, 241 Ala. 9, 1 So.2d 379; Bell v. Nichols, 245 Ala. 274, 16 So.2d 799.

While there were tendencies of the evidence to show that at times William Nesbitt was of unsound mind, there was evidence to the contrary which strongly tended to show that he was of sound mind and had a sound mind at the time the will was executed. The burden is on the contestant to show incapacity at the time the will was made and insanity prior to that time, unless of a permanent character, raises no presumption of insanity at the time the will was made. Cox v. Martin, 250 Ala. 401, 34 So.2d 463; Tucker v. Tucker, 248 Ala. 602, 28 So.2d 637; Lockridge v. Brown, 184 Ala. 106, 63 So. 524. The physician attending William Nesbitt, witness for the contestant, testified that he was suffering from uraemia and did not have the mental capacity to transact his affairs, but on cross-examination said, "I don't remember the time he made his will. I didn't even know he had made the will. Now he may have, at that time, had a lucid moment. I won't because I can't answer, I don't know."

The effort to show undue influence revolves around the actions of William B. McCullough, the Attorney, who is one of the beneficiaries named in the will. There is no effort to show undue influence exercised by Adeline Tate. So far as Aaron Stone and her husband are concerned, the husband called William B. McCullough to come to their home on the evening of January 3, 1948, and Aaron Stone was with William Nesbitt in the room in the hospital when the will was brought in for execution. Nothing further can be said of their acts, unless their attentions to William Nesbitt which the jury could ascribe to affection and devotion, could be regarded as made with evil intent.

The testimony with reference to the part played by William B. McCullough has been studied with great care. The jury had before it ample evidence from which to infer that William B. McCullough did no more than to draft the will and have it signed in accordance with the instructions and request of William Nesbitt. Under the evidence the jury could find that there was no influence exerted on William Nesbitt which was tantamount to moral coercion and constrained him to do that which was against his will but which from fear, the desire of peace or some other feeling than affection, he was unable to resist. Cox v. Martin, supra; Kahalley v. Kahalley, supra.

On the issue of undue influence the jury had the right to consider the relationship of the parties to see if an unnatural disposition had been made by the testator. The contestant was the only child,

but the jury could infer that there was little affection between father and daughter. On the contrary it could equally infer that the testator remembered as objects of his bounty those who had been his friends, who had helped and comforted him through the years at times when he needed these things. Taking all the evidence together we think the issues of mental incapacity and undue influence clearly presented questions for the jury. The court correctly overruled the motion for a new trial based on the ground that the verdict was unjust and contrary to the weight of the evidence.

Assignment II. It is claimed that the motion for a new trial should have been granted because the verdict was the result of passion and prejudice engendered by a remark made by counsel for the proponent in his closing argument as follows: "The money in this case, gentlemen, sure doesn't lie with the residents of the City of Birmingham, who stand to benefit by this will; that lies with the woman in New York who not only gets the property there, which is the most valuable of that William owned, but a net income of $105 a month; but modifies that problem by contesting this will." It is argued that this is an appeal to local prejudice against a nonresident. There was no objection to the remark and no suggestion of instruction by the court to the jury with reference to the remarks. To be available for reversal, we must be persuaded that the remark was so grossly improper and highly prejudicial as to have been ineradicable. Arant v. State, 232 Ala. 275, 167 So. 540, 544. In this last cited case it was pointed out that a "trial is a legal battle, a combat in a sense, and not a parlor social affair." The duty of the attorney, according to that case, is to prosecute the cause he represents with earnestness and vigor, "to strike hard blows, but not foul ones." We cannot class the remark as ineradicable or even as reprehensible in the light of the foregoing statement. In the case at bar there were two pieces of property left by the will, one located in New York City which was bequeathed to the contestant who lives in New York and the other situated in the City of Birmingham, which was willed to persons living there. Tendencies of the evidence showed that the daughter living in New York seldom over a long period of years saw her father who resided in Birmingham. We do not see how the case could have been well presented without some reference to those things. Alabama Great Southern R. Co. v. Swain, 248 Ala. 535, 28 So.2d 714.

Assignment XVIII. There was no error in giving charge No. 15. The appellant insists that giving the charge was prejudicial error, because it fails to take account of the confidential relationship existing between attorney and client and the fact that the lawyer who drafted the will and superintended its signature, received a part of the estate of the testator under the will. We do not regard this position as correct. Charge No. 15 contains a correct statement of the law and was approved in the case of Knox v. Knox, 95 Ala. 495, 11 So. 125, 36 Am.St.Rep. 235. Since this is the situation, if the charge was misleading because it did not cover the exact or entire situation in the case, it was the duty of the contestant to ask for an explanatory charge and where this was not done the trial court will not be put in error. Claude Jones & Son v. Lair, 245 Ala. 441, 17 So.2d 577; McCall v. Busey, 244 Ala. 162, 12 So.2d 401; Conner v. Foregger, 242 Ala. 275, 7 So.2d 856.

There is another reason why the court was not in error. By the term burden of proof is meant the duty of establishing the truth of a given proposition or issue by such an amount of evidence as the law demands in the case in which the issues arise. It is sometimes also said to mean the duty of producing evidence at the beginning or at any subsequent stage of the trial in order to make or meet a prima facie case. In some of our cases this is referred to as the burden or duty to go forward with the evidence. The burden in the sense of the duty of producing evidence may pass from party to party as the case progresses but the burden of proof meaning the obligation to establish the truth of a given proposition or issue rests throughout the trial upon the party asserting the affirmative of the issue and unless he meets this obligation upon the whole case, he fails. The burden of proof never shifts during the course of the trial. Birmingham

Trust & Savings Co. v. Acacia Mutual Life Ass'n, 221 Ala. 561, 130 So. 327; Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257. So in the case of charge 15 in the present case the burden of proving undue influence, which was operative at the time of the execution of the will, and caused its execution contrary to the free and independent wishes of William Nesbitt, was on the contestant and remained on the contestant throughout the trial. With this understanding of the situation it is clear that we will not put the court in error for giving charge 15.

Assignment XVIII. There was no error in giving charge No. 16. The charge follows the language of this court in the case of Cox. v. Martin, 250 Ala. 401, 34 So.2d 463, 464, as follows:

"The law, of course, presumes, prima facie, testamentary capacity in adults, that being the normal condition of the human mind, and the burden is on the party attacking the will to show incapacity at the time the will was made and insanity prior to that time, unless of a permanent character, raises no presumption of insanity at the time of the execution of the will. Under such circumstances the contestants had the burden of showing that testator lacked the requisite mental capacity to dispose of her property at the time the will was made. * * * "

The physician, who testified in the case, stated with respect to the time the testator signed the will, "He may have, at that time, had a lucid moment." As to the other witnesses we do not consider that there was evidence in the case of fixed or permanent insanity on the part of the testator. Rather, the only evidence of mental disturbance tended to show that the testator was enfeebled by age and debilitated by disease. In Cox v. Martin, supra, we also said:

"Mental enfeeblement or advanced age is not sufficient to invalidate a will unless it is shown that the testator's mind was so impaired as to render her incapable of acting intelligently and voluntarily with respect to the transaction. * * * "

There was ample evidence, as already indicated, that William Nesbitt was of sound mind and entirely competent to transact business while in the hospital.

Assignment No. XXVIII. Over objection the contestant was asked the following question: "Now will you explain to the jury how your father came into ownership of the New York property?" Of course title to the property is not an issue to be tried in a case of this kind. Winston et al. v. Elliott, 169 Ala. 416, 53 So. 750. From our examination of the record we do not think that there was any effort to try a question of title. On the contrary this question along with other questions was designed to show that William Nesbitt inherited the New York property from his deceased sister and that Margaret King had been the administratrix of that estate. Tendencies of the evidence showed that out of that situation friction had developed between father and daughter, causing bad feeling on the part of the father toward the daughter. There was no error in this regard.

Assignment No. XXXIV. According to the testimony of William B. McCullough he wrote a letter to William Nesbitt and took it out to him at the hospital on January 6th. The letter was at that time either read by William Nesbitt or read to him. The letter in substance shows the disposition under the will of the property belonging to William Nesbitt and asks if there are any further changes which William Nesbitt desires. Some changes had been made in the first draft of the will. The letter was admitted in evidence over the objection that it was a self-serving declaration. There was no error in this ruling. Since tendencies of the evidence showed that William Nesbitt understood the contents of the letter and acquiesced in the information which it contained, the letter was competent to show that the testator had knowledge of the contents of the will and that it was drafted in accordance with instructions given by the testator to the attorney. In fact under the circumstances the letter became an approval of the will as drafted and so could be regarded as in the nature of a declaration by the testator that the will as written was consistent with previously declared intention of the testa-

tor. Slagle v. Halsey, 245 Ala. 198, 15 So. 2d 740.

Assignments XXXI, XXXII and XXXIII. These assignments each deal with questions which William B. McCullough was allowed to answer over objection of the contestant. They are similar in character and one question is sufficient to make the assignments understandable. It is as follows: "Will you briefly outline to the jury the course of your representation of William Nesbitt, that is, when he first employed you, the kind of employment and all you did for him and how often you saw him, etc.?" There was no error in these rulings. The questions had to do with representation of testator by the attorney over a period of years and the questions were asked for the purpose of establishing the fact that William B. McCullough had not drafted the will of William Nesbitt as one isolated matter of employment. It was proper to show the relationship existing between them as such relationship had a material bearing on that part of the provision of the will which left to the attorney an undivided part of the Birmingham property.

We find the record free of error and the judgment of the lower court is due to be affirmed.

Affirmed.

BROWN, FOSTER, LAWSON, and SIMPSON, JJ., concur.