CRAWLEY, Judge.
In August 1994, James Bryant applied for unemployment compensation benefits. Bryant’s employer contested the application, and, following a hearing, a Department of Industrial Relations administrative hearing officer disqualified Bryant from receiving any benefits. Bryant ultimately appealed the disqualification to the trial court, which awarded him benefits. After the presentation of evidence ore tenus, the trial court found that Bryant had voluntarily quit his employment, but that he had done so with “good cause,” pursuant to Ala.Code 1975, § 25-4-78(2), and therefore was entitled to receive unemployment compensation benefits. The Department appeals.
The trial court’s findings of fact in an unemployment compensation case are presumed correct, and its judgment based on such findings will not be reversed unless the findings are clearly contrary to the great weight of the evidence. Department of Industrial Relations v. Pickett, 448 So.2d 364 (Ala.Civ.App.1983). The Unemployment Compensation Act is “insurance for the unemployed worker and is intended to be a remedial measure for his benefit.” Department of Industrial Relations v. Jaco, 337 So.2d 374, 376 (Ala.Civ.App.1976). “It should be liberally construed in [the] claimant’s favor and the disqualifications from benefits should be narrowly construed.” Department of Industrial Relations v. Smith, 360 So.2d 726, 727 (Ala.Civ.App.), cert. den., 360 So.2d 728 (Ala.1978).
The Department argues that Bryant is not entitled to any unemployment compensation benefits because, it argues, he failed to comply with the unemployment compensation statutes and departmental regulations in making his claim for benefits. The Department first argues that Bryant failed to timely file his claim for benefits. Ala.Code 1975, § 25-4-77, states:
“(a) An unemployed individual shall be eligible to receive benefits with respect to any week in a benefit year which begins on or after January 1, 1989, only if the director finds that:
“(1) He has made a claim for benefits with respect to such week in accordance with such regulations as the director may prescribe.”
The Department’s Regulation 480-4-3-.08(l)(b) provides in pertinent part:
“In order to establish eligibility for benefits or for waiting period credit for weeks of unemployment, the claimant shall, after the initial visit, file continuing claims by mail. Such weekly claims for benefits must be filed immediately (but not later than (7) seven calendar days) after the end of the week for which such benefits are being claimed....”
*471 Bryant admits that he did not make a claim for benefits after the denial was reviewed in the Department and after he had filed his action in the trial court. He contends that it was not necessary for him to make additional claims after he filed his action because, he says, the Department had notice that he had contested the denial of his benefits for those additional weeks and, he says, he knew the Department would continue to deny those claims. See Ex parte Lake Forest Property Owners’ Ass’n, 603 So.2d 1045 (Ala.1992) (exhaustion of administrative remedies is not required if doing so would be futile). We agree with Bryant. Bryant’s filing of his action in the trial court gave the Department notice that he was claiming benefits for those weeks he remained unemployed after he had filed the action seeking review of the Department’s denial of benefits.
The Department next argues that Bryant is not entitled to unemployment compensation benefits because, it says, he became self-employed after it had denied him benefits. The Department contends that the following testimony presented during the hearing establishes that Bryant was self-employed:
“Q. I’m Glen Chaffin. You know in order to be eligible for the benefits, you have to be looking for work? You have a dump truck, do you not?
“A. That’s true.
“Q. Do you not hold yourself out for employment and rent that truck out and services out? You use it as a business, don’t you?
“A. I don’t have the finances to back me up.
“Q. You’re saying that during the entire time that you’ve been unemployed here, you have not used that truck for business?
“A. I have tried.
“Q. How did you try?
“A. I tried to apply myself as a — To be available with my dump truck.
“Q. You have used that truck for business during this time on some occasions, have you not?
[[Image here]]
“A. Yes. I did haul a couple of loads of dirt, and that was it.”
Ala.Code 1975, § 25-4-78(11), states: “An individual shall be disqualified for total or partial unemployment: ... For any week in which he is self-employed and each week thereafter until he shall establish that he is no longer self-employed.” Bryant’s admission that he was paid to haul dirt in his dump truck a couple of times does not provide evidence that he was self-employed for any period of time. The Department elicited no testimony from Bryant that he had regular employment from hiring out the use of his dump truck. Bryant further testified that he had attempted to obtain regular employment as a hauler, but that he could get only those few jobs. Section 25-4-78(11) states that self-employment disqualifies a claimant from receiving benefits “for any week ” the claimant is self-employed. The Department presented no evidence that Bryant was self-employed for a full week or evidence of the amount of compensation Bryant received for these few jobs; rather, his undisputed testimony is that he was able to do a few jobs but it was not regular work for any period of time, much less for an entire week.
The Department, finally, argues that the trial court erred by finding that Bryant had voluntarily quit his employment for good cause. Bryant, as the claimant for unemployment compensation, has the burden to prove that he quit his employment for good cause. Davis v. Director, Department of Industrial Relations, 507 So.2d 942 (Ala.Civ.App.1986). After reviewing the entire record, we adopt the trial court’s findings of fact, which follow:
“1. That [Bryant] was employed by Henry Marine prior to August 18, 1994 in an employment relationship as defined in Ala.Code [1975], § 25 — 4-10; that Henry Marine was at that time an employing unit or employer under Ala.Code [1975], § 25-4-8; that [Bryant] was at that time an employee under Ala.Code [1975], § 25-4-7; and that the parties are thus subject to and this action is governed by the Unemployment Compensation laws of the State *472 of Alabama, Ala.Code § 26-4-1, et seq. (1975).
“2. That [Bryant] separated from his employment with Henry Marine on or about August 18, 1994. Said separation followed a period of physical and emotional abuse, harassment and intimidation resulting from the acts and conduct of his immediate supervisor, Tommy Williams, the pilot of the vessel on which [Bryant] worked. Although Mr. Williams had died in June of 1994, [Bryant’s] testimony established that the statements and acts of the Port Captain, Joe Henline, had demonstrated that the treatment of [Bryant] under Mr. Williams would be continued under the replacement pilot. [Bryant] testified that he was told by management on at least one occasion that he should leave his employment with Henry Marine, and that on another occasion efforts were made by management to prevent him from showing up and performing his duties. The final straw occurred on or about August 18, 1994, when [Bryant] heard Joe Henline tell one of the boat captains that [Bryant] was the problem on the boat, and that he was still there.
“3. Also, [Bryant’s] testimony established that he had been promised an opportunity to train as the vessel pilot himself on occasions prior to August 18, 1994, that he had frequently inquired about the training and promotion and was told that he would be so trained and promoted when a position came available, that he completed the required length of service on a motor vessel as a deck hand in accordance with the regulations of the United States Coast Guard, that the position of pilot became available in June of 1994 when Tommy Williams died, but that [Bryant] was denied the opportunity to train for that position as he had been promised. The witnesses [for] Henry Marine, including Joe Henline, essentially [contradicted] this testimony, but explained that [Bryant] was not trained as a pilot because he failed to attend the Coast Guard’s school, had failed to accrue enough available time off to attend the school, and had not saved enough money to pay for his expenses related to the school. Further testimony, however, established that other pilots had been sent to the school without having met one or more of those pre-conditions.
“4. That [Bryant] remained available for and willing to accept suitable employment, but was unable to obtain same during the 26 weeks immediately following his separation from employment with Henry Marine.”
We conclude that the trial court did not abuse its discretion by finding that Bryant quit his employment with good cause. As shown in the trial court’s findings, Bryant presented evidence that his supervisors consistently harassed him, impaired his ability to perform his duties, and did not afford him the same opportunities for promotion as his co-workers. We conclude that Bryant carried his burden of proving that he quit his employment for good cause. Therefore, we affirm the judgment of the trial court.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.