DONALDSON, Judge.
An employer bears the burden of proving that a former employee is disqualified from receiving unemployment-compensation benefits that the former employee would otherwise normally be entitled to receive. See Ex parte Rogers, 68 So.Sd 773, 780-81 (Ala.2010); Jim Skinner Ford, Inc. v. Davis, 118 So.3d 663, 664 (Ala.Civ.App.2012). Mohammed Al-Assi appeals from a judgment of the Jefferson Circuit Court (“the trial court”) in favor of the Alabama Department of Labor (“ADOL”)[1] and Gregg Appliances,- Inc. (“Gregg”), holding that, pursuant to § 25-4-78(2), Ala.Code 1975, he was disqualified from receiving unemployment-compensation benefits because he voluntarily quit his employment with Gregg without good cause. Because we find that Gregg and ADOL did not meet their burden of proving that Al-Assi voluntarily quit his employment and was therefore disqualified from receiving unemployment-compensation benefits, we reverse the judgment of the trial court and remand the matter to the trial court for further proceedings consistent -with this opinion.

Procedural History and Facts

On November 6, 2011, Al-Assi filed a claim with ADOL for unemployment-compensation benefits under the Alabama Unemployment Compensation Act (“the Act”), § 25-4-1 et seq., Ala.Code 1975. ADOL initially considered Al-Assi to be eligible to receive benefits. On December 12, 2011, Gregg filed an appeal of ADOL’s determination to grant Al-Assi unemployment benefits, asserting that Al-Assi had “voluntarily quit” his job with Gregg. A hearing was held on December 28, 2011, before an administrative hearing officer. All testimony was taken by telephone. At that hearing, the hearing officer received the testimony of Al-Assi; Tom Spade, Gregg’s store manager at the store where Al-Assi was employed; and Patrick Al-bright, Gregg’s floor manager at the store where Al-Assi was employed. Al-Assi and Gregg were represented by counsel.
The testimony showed that Al-Assi began his employment with Gregg on May 1, 2010. The location of the employment was a retail appliance store in Birmingham where Al-Assi was employed as a salesperson. Gregg provided Al-Assi with an employee handbook when his employment began. The handbook contained policies concerning employee absences from work.[2] *934 One of the policies in the handbook contained the following language, referred to by the parties as the “no call, no show” policy: “Absence from work without calling in or notifying [the] employer for 2 consecutive days or more will result in [the employee’s] termination.” According to testimony, the no call, no show policy continued as follows: “[A] continuous absence for multiple days resulting from an associate’s single illness will be considered one occurrence for purposes of this attendance policy.”
Al-Assi was scheduled to work daily from October 26, 2011, to October 30, 2011. On the morning of October 26, 2011, Al-Assi contacted Albright, the floor manager, by telephone to inform Albright that he had a written physician’s excuse (“the first excuse”) to be off work from October 26, 2011, to October 31, 2011, due to back pain. Because he continued to experience pain, Al-Assi contacted his physician on October 27, who referred him to a pain specialist. Al-Assi saw the specialist on October 28, 2011. The specialist directed Al-Assi to refrain from working until November 4, 2011, when he was to have another appointment. The specialist provided Al-Assi with a written physician’s excuse to be off work until November 4, 2011 (“the second excuse”).
Al-Assi testified that he called Albright again on October 28, 2011, and that he notified Albright that he would need to be off work for an additional week based on the second excuse. Al-Assi testified that Albright did not ask Al-Assi to bring the first excuse and the second excuse to the store.
On November 4, 2011, Al-Assi returned to the specialist. The specialist determined that Al-Assi would need to change his medicine and that he would require additional time off from work. The specialist provided Al-Assi with a written physician’s excuse from work for an additional period (“the third excuse”). That same day, Al-Assi went to the store and spoke to Spade, the store manager. Al-Assi provided the second excuse and the third excuse to Spade, but he did not have the first excuse with him at the time. Spade informed Al-Assi that Gregg had terminated his employment for violating Gregg’s no call, no show policy because Al-Assi had not called in to the store daily since being absent on October 26, 2011.
Albright testified that he had spoken with Al-Assi on October 26 but that he had not spoken with Al-Assi on October 28. Spade testified that Albright had informed him that Al-Assi had called on October 26 and had reported that he would be off work until October 30, 2011, but that Al-bright had never informed him that Al-Assi had called back on October 28. Spade testified that the next time he or Albright had heard from Al-Assi was on November 4, when Al-Assi came to the store. Spade testified that Al-Assi admitted to him at that time that he had not called in since October 26. Albright testified that he had been informed on November 1, 2011, that Al-Assi had been dismissed for job abandonment.
On January 9, 2012, the hearing officer rendered a decision denying Al-Assi’s claim for unemployment-compensation *935 benefits, pursuant to § 25^1-78(2), on the ground that Al-Assi had voluntarily left his most recent bona fide work without good cause. The hearing officer’s written decision contained a statement indicating that the decision had been mailed to Al-Assi on January 9, 2012.
On February 1, 2012, Al-Assi applied for permission to appeal that decision to ADOL’s Board of Appeals, pursuant to § 25 — 4—92(c), Ala.Code 1975. In his application, Al-Assi claimed that neither he nor his attorney had received notice of the hearing officer’s decision. The Board of Appeals affirmed the decision of the hearing officer on February 22, 2012, on the basis that Al-Assi’s application for permission to appeal had not been filed within 15 days after notice of the decision had been mailed, as required by § 25-4-92(c). Al-Assi appealed the Board of Appeals’ affir-mance of the hearing officer’s decision to the trial court in April 2012. The trial court entered an order on December 17, 2012, in which it determined that Al-Assi’s application for permission to appeal to the Board of Appeals had been timely, presumably finding that Al-Assi had not received adequate notice of the hearing officer’s determination. The trial court remanded the matter to the Board of Appeals. On February 22, 2013, the Board of Appeals affirmed the hearing officer’s decision. See Rule 480 — 1—3—.03(1), Ala. Admin. Code (ADOL) (“Within 30 days after the application for Leave to Appeal shall have been received by the Board of Appeals, the Board of Appeals shall either grant or deny the application solely on the basis of the application and the record.”).
On March 4, 2013, Al-Assi appealed the Board of Appeals’ decision of February 22, 2013, to the trial court. ADOL was named as the defendant in the case. Gregg filed a motion to intervene in the case pursuant to Rule 24, Ala. R. Civ. P., on January 23, 2014,and the trial court granted that motion.
The trial court conducted a hearing on February 6, 2014. The parties agreed to submit the transcript of the December 28, 2011, telephone hearing before the administrative hearing officer to the trial court in lieu of presenting live testimony of witnesses. Al-Assi also submitted an affidavit from Jane Archer, Ph.D., chair of the English Department of Birmingham-Southern College. Dr. Archer testified that she had reviewed Gregg’s no call, no show policy and that her interpretation of the language in that policy was that it did not require an employee to call in to report absences multiple times for one event of illness. She testified, in part:
“[T]he most reasonable interpretation of the handbook would be that, if an employee contacts his or her manager, and informs him or her that the employee is required to be absent multiple days on doctor’s orders due to a single illness, as long as the employee told the manager the number of days medically required, this is T occurrence for purposes of this Attendance Policy.’ The Employee Handbook does not specifically state a requirement that the employee must call multiple times for one occurrence. An employee therefore may reasonably assume that having informed his or her manager of the multi-day leave, Handbook policy has been followed.”
ADOL and Gregg did not object to, or move to strike, Dr. Archer’s affidavit.
On March 11, 2014, the trial court entered a judgment, without making findings of fact, affirming the Board of Appeals’ February 22, 2013, decision and stating that Al-Assi was “[disqualified] from receiving benefits pursuant to § 25-4-78(2).” *936 On April 18, 2014, Al-Assi filed a timely notice of appeal to this court.[3]

Standard of Review

In unemployment-compensation cases, “[t]he employer has the burden of proving that a claimant is disqualified from receiving unemployment-compensation benefits because the claimant voluntarily quit work, pursuant to § 25-4-78(2).” Jim Skinner Ford, Inc. v. Davis, 113 So.3d at 666. Pursuant to § 25-4-95, Ala. Code 1975, the appeal to the trial court was de novo.
“In a case in which a trial court has not heard live testimony, [the supreme court] has held that ‘a reviewing court will not apply the presumption of correctness to a trial court’s findings of fact and that the reviewing court will review the evidence de novo.’ Eubanks v. Hale, 752 So.2d 1113, 1122 (Ala.1999). Our statutory obligation in a case such as this is to ‘weigh the evidence and give judgment as [we] deem[ ] just.’ ”
Bentley Sys., Inc. v. Intergraph Corp., 922 So.2d 61, 70-71 (Ala.2005). “Consequently, no presumption of correctness will be accorded the trial court’s findings on the evidence, and [the appellate court] will sit in judgment on the evidence as if it had been presented de novo.” Hospital Corp. of America v. Springhill Hosps., Inc., 472 So.2d 1059, 1061 (Ala.Civ.App.1985) (citing Smith v. Dalrymple, 275 Ala. 529, 156 So.2d 622 (1963); and Lepeska Leasing Corp. v. State Dep’t of Revenue, 395 So.2d 82 (Ala.Civ.App.1981)).

Discussion

Section 25-4-78, Ala.Code 1975, provides, in part:
“An individual shall be disqualified for total or partial unemployment:
[[Image here]]
“(2) Voluntarily Quitting Work. If he has left his most recent bona fide work voluntarily without good cause connected with such work.
“a.l. However, he shall not be disqualified if he was forced to leave work because he was sick or disabled, notified his employer of the fact as soon as it was reasonably practicable so to do, and returned to that employer and offered himself for work as soon as he was again able to work; provided, however, this exception shall not apply if the employer had an established leave-of-absence policy covering sickness or disability and:
“(i) The individual fails to comply with same as soon as it is reasonably practicable so to do; or
“(ii) Upon the expiration of a leave of absence shall fail to return to the employer and offer himself for work, if he shall then be able to work, or if he is not then able to work, he fails to so notify his employer of that fact and request an extension of his leave of absence as soon as it is reasonably practicable so to do.”
Al-Assi contends that the trial court erred in determining that he voluntarily quit his employment with Gregg, pursuant to § 25^-78, by failing to call in when he was off work due to health issues. He argues that Gregg’s no call, no show policy is vague and ambiguous and that Gregg and ADOL did not satisfy their burden of proving that he is disqualified from receiving unemployment-compensation benefits under § 25^-78(2).
*937 We first address whether Gregg’s no call, no show policy is ambiguous. Language is ambiguous if it is “ ‘capable of being understood by reasonably well-informed persons in either of two or more senses....'" S & S Distrib. Co. v. Town of New Hope, 334 So.2d 905, 907 (Ala.1976) (quoting State ex rel. Neelen v. Lucas, 24 Wis.2d 262, 267, 128 N.W.2d 425, 428 (1964)). See also Slagle v. Ross, 125 So.3d 117, 136 (Ala.2012) (Shaw, J., concurring in the result in part and dissenting in part) (recognizing that language is ambiguous where it “is susceptible to at least two reasonable interpretations”), and Vainrib v. Downey, 565 So.2d 647, 648 (Ala.Civ.App.1990) (“When the agreement is reasonably susceptible to more than one meaning, an ambiguity exists.”).
Al-Assi argues that Gregg’s no call, no show policy, when read in its entirety, could be interpreted to mean that an employee who has a physician’s excuse to remain off work for multiple days due to illness is required to call Gregg to provide notification of the period of expected absence from work but that the policy does not thereafter require the employee to call every day during that period of absence. ADOL asserts that the policy requires an employee to call Gregg at least every 2 days during the time of absence from work, regardless of whether the employee has previously informed Gregg of the expected length of the absence. When the two sentences of the no call, no show policy are read together and considered with the evidence presented in this case, including the testimony of Dr. Archer that was admitted without objection, we conclude that an ambiguity has been presented.
Having concluded that the policy is ambiguous as applied to the specific facts of this case, we next consider whether ADOL and Gregg met their burden of proving that Al-Assi is not entitled to unemployment-compensation benefits on the basis that he voluntarily quit work. The term “burden of proof’ has been defined as follows:
[T]he duty of establishing the truth of a given proposition or issue by such an amount of evidence as the law demands in the case in which the issues arise. It is sometimes also said to mean the duty of producing evidence at the beginning or at any subsequent stage of the trial in order to make or meet a prima facie case. In some of our eases this is referred to as the burden or duty to go forward with the evidence....’”
“ ‘Smith v. Civil Serv. Bd. of Florence, 52 Ala.App. 44, 48-49, 289 So.2d 614, 617 (1974) (quoting King v. Aird, 251 Ala. 613, 618, 38 So.2d 883, 888 (1949)). In all civil actions, when a party bears the burden of proof, that party must present substantial evidence of the elements necessary to sustain his or her case in order to receive a judgment in his or her favor. Ala.Code 1975, § 12-21-12(a). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’ ”
Mitchell v. Mitchell, 69 So.3d 904, 909 (Ala.Civ.App.2011) (quoting Payne v. Payne, 48 So.3d 651, 654 (Ala,Civ.App.2010)). Furthermore, this court has held that
“[t]he Unemployment Compensation Act is ‘insurance for the unemployed worker and is intended to be a remedial measure for his benefit.’ Department of Industrial Relations v. Jaco, 337 So.2d 374, 376 (Ala.Civ.App.1976) [(overruled on other grounds by Ex parte Rogers, 68 So.3d 773 (Ala.2010)) ]. ‘It should be *938 liberally construed in [the] claimant’s favor and the disqualifications from benefits should be narrowly construed.’ Department of Industrial Relations v. Smith, 360 So.2d 726, 727 (Ala.Civ.App.), cert. den., 360 So.2d 728 (Ala.1978).”
State Dep’t of Indus. Relations v. Bryant, 697 So.2d 469, 470 (Ala.Civ.App.1997).
We note that the § 25-4-78(2) refers to “voluntarily” quitting work.
“The word ‘voluntary’ is not defined in Ala.Code 1975, § 25-4-78. ‘The rules of statutory construction require that the words used in a statute be given their plain, natural, ordinary, and commonly understood meaning.’ Ex Parte New England Mutual Life Ins. Co., 663 So.2d 952, 955 (Ala.1995) (citing Alabama Farm Bureau Mutual Casualty [Insurance] Co. v. City of Hartselle, 460 So.2d 1219, 1224 (Ala.1984)). The word ‘voluntary’ implies the making of a decision by one’s own accord or choice. ‘Voluntary’ is defined as ‘[resulting from free choice, without compulsion or solicitation.’ Black’s Law Dictionary 1575 (6th ed.1990).”
Director, Dep’t of Indus. Relations v. Ford, 700 So.2d 1388, 1390 (Ala.Civ.App.1997).
It is undisputed that Al-Assi provided notification to Albright that he had a physician’s excuse to be out of work from October 26 to October 31, 2011. Al-Assi cannot be said to have voluntarily quit work during that period because he complied with his interpretation of the policy, which, as discussed supra, we determine to have been reasonable. In dispute, however, is whether Al-Assi spoke with Albright by telephone on October 28, 2011, to notify Gregg that he would remain off work until November 4, 2011, pursuant to the second excuse. If Al-Assi did so, then he would be in compliance with his reasonable interpretation of the policy. If he did not, then he would be in violation of the policy for not showing up to work after October 30 and for not notifying Gregg of his continued absence.
Pursuant to § 25-4-95, AIa.Code 1975, the trial court’s review of the Board of Appeals’ decision was de novo. The trial court did not receive live testimony of witnesses. Conflicting testimony'was presented in writing — in the form of the record of the administrative hearing — to the trial court regarding whether Al-Assi made the telephone call to Albright on October 28. The trial court was not in a position to judge the credibility of the witnesses. Thus, the ore tenus rule is- inapplicable, the trial court’s judgment is not due a presumption of correctness, and the trial court’s determination as to the facts is, as noted earlier, subject to a de novo review by this court. Bentley Sys., Inc., supra. See also Muscogee Constr. Co. v. Peoples Bank & Trust Co., 286 Ala. 258, 261, 238 So.2d 883, 886 (1970).
Al-Assi testified at the administrative hearing that he had contacted Al-bright by telephone on October 28, 2011, to notify him of the second excuse. At the administrative hearing, Al-Assi also produced copies of the three physician excuses, confirming that he was not at work due to an illness. Albright testified that he did not speak with Al-Assi on October 28. Spade testified that Al-Assi did not contact him on October 28 and that he did not hear from Al-Assi until November 4, 2011, 9 days after Al-Assi’s initial telephone notification to Albright that he would be off work until October 31. The burden was on ADOL and Gregg to establish that Al-Assi was in violation of the no call, no- show policy. Skinner, 113 So.3d at 666. To do so, ADOL and Gregg were required to establish that Al-Assi’s claim that he called Albright on October 28 was not credible. The only evidence submitted on that issue was the conflicting testimony. *939 ADOL notes that Al-Assi did not provide the trial court with telephone records documenting the October 28 call. However, it was not Al-Assi’s burden to produce evidence to support his testimony; instead, the burden was on ADOL and Gregg to establish that Al-Assi was disqualified from receiving benefits. To do so, ADOL and Gregg had to show that Al-Assi’s claim that he made the October 28 call was not credible. The only evidence presented to the trial court in support of the denial of benefits was a transcript containing conflicting testimony on an issue essential to the determination whether Al-Assi is entitled to compensation under the Act. There was no evidence presented from which the trial court could discredit the testimony of Al-Assi that he made the call, and, therefore, ADOL and Gregg failed to establish that Al-Assi was disqualified from receiving benefits. ■
The issue before the trial court and this court is not whether Al-Assi’s employment with Gregg should have been terminated. The issue is whether ADOL and Gregg carried their burden of proving that Al-Assi was disqualified from receiving unemployment-compensation benefits. We hold that they did not. Therefore, we reverse the trial court’s judgment and remand the cause with instructions to the trial court to enter a judgment reversing the Board of Appeals’ decision affirming the administrative law judge’s order denying Al-Assi benefits under the Act and awarding Al-Assi the benefits he is entitled to under the Act.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Pursuant to Act No. 2012-496, Ala. Acts 2012, codified at § 25-2-1.1, Ala.Code 1975, and effective October 1, 2012, the Alabama Department of Industrial Relations has merged with ADOL and the new department is named the "Alabama Department of Labor.” Although the proceedings below were commenced before the effective date of Act No. 2012-496, and although the trial-court record, in some places, refers to the Alabama Department of Industrial Relations, to maintain consistency in this opinion we refer to the department as ADOL. We note that § 25-2-1.1(b) provides, in part, that, "whenever any act, section of the Code of Alabama 1975, or any other provision of law refers to the Department of Industrial Relations ..., it shall be deemed a reference to the Department of Labor ... created by Act 2012-496.”

. Excerpts of the employee handbook pertinent to this appeal are not in the record, and the record was not supplemented pursuant to Rule 10, Ala. R.App. P. In his brief to this court, Al-Assi attached the portion of the handbook concerning Gregg’s attendance policy.
"As we have stated on many prior occasions, '[a]n appellate court is confined in its review to the appellate record, that record cannot be “changed, altered, or varied on appeal by statements in briefs of counsel,” and the court may not “assume error or presume the existence of facts as to which *934 the record is silent.” ' Beverly v. Beverly, 28 So.3d 1, 4 (Ala.Civ.App.2009) (quoting Quick v. Burton, 960 So.2d 678, 680-81 (Ala.Civ.App.2006)).”
Dreading v. Dreading, 84 So.3d 935, 937 (Ala.Civ.App.2011). Accordingly, excerpts from the employee handbook attached to Al-Assi's appellate brief have not been considered. However, the portion of the handbook that contains the relevant policy in this case was read into the record during the hearing before the administrative hearing officer, without objection from either party, and it is, therefore, part of the record on appeal.

. Al-Assi and ADOL have filed briefs on appeal. Gregg did not file an appellate brief, although its interest is aligned with the interest of ADOL.