Rel: February 9, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0387
_____

**Richard Boyken Tyson**

**v.**

**Cole Scott Harbin and Carson Ray Harbin**

**Appeal from Lauderdale Circuit Court**
**(CV-20-900205)**

MITCHELL, Justice.

After their mother passed away, Cole Scott Harbin and Carson Ray

Harbin ("the Harbin brothers") found out they would inherit almost

nothing from her. Instead, the vast majority of her estate would go to her fiancé, Richard Boyken Tyson, in accordance with her will. After Tyson submitted her will to the Lauderdale Probate Court, the Harbin brothers contested it and removed the administration of the estate to the Lauderdale Circuit Court. In doing so, they alleged, among other things, that Tyson had unduly influenced their mother. After a trial, a jury returned a verdict in favor of the Harbin brothers. The circuit court entered judgment in their favor. We affirm.

Facts and Procedural History

In September 2017, Gwendolyn Ann Harbin divorced her husband. She had two children with her ex-husband -- Cole and Carson. Before the divorce was final, she and Carson, then a minor, moved in with Tyson. In the divorce, the Harbins agreed to sell their marital home and that Gwendolyn would be entitled to $100,000 of the sale proceeds.

In December 2017, Gwendolyn had a stroke and spent several days in the hospital. During her time there, Tyson proposed to Gwendolyn, and she accepted. A few months later, Tyson and Gwendolyn, now engaged, sat together at the kitchen table and discussed their wills. They

filled out forms provided by Gwendolyn's attorney that would be converted into final, executable wills. The will that Gwendolyn ultimately executed named Tyson as her estate's personal representative and left him most of her assets. Under that will, Carson received a share of Gwendolyn's personal effects and a portion of her ashes, while Cole received only a portion of her ashes.

In November 2019, Gwendolyn fell sick again and passed away. Soon after, the probate court admitted her will to probate and granted letters testamentary to Tyson. Before a final settlement of the estate occurred, the Harbin brothers contested the will and removed the administration of the estate from the probate court to the circuit court. In their complaint, they alleged that Tyson had exerted undue influence over Gwendolyn in executing the will and that Gwendolyn had lacked testamentary capacity.

After the Harbin brothers dropped their testamentary-capacity claim, the case proceeded to a jury trial on the undue-influence claim. At trial, Tyson moved for judgment as a matter of law at the end of the Harbin brothers' case-in-chief; he did so again at the close of all the

evidence.  The circuit court denied both motions.  The case then went to the jury, which reached a verdict in favor of the Harbin brothers, finding that Tyson had unduly influenced Gwendolyn.  The circuit court entered judgment in favor of the Harbin brothers and set aside the will.  Tyson then filed a postjudgment motion for judgment as a matter of law, or in the alternative, a new trial,[1] which the circuit court denied.

Tyson appealed, arguing that the Harbin brothers had failed to provide substantial evidence of undue influence and that he was therefore entitled to judgment as a matter of law.

Standard of Review

We review de novo a trial court's decision to grant or deny a motion for judgment as a matter of law.  See McGee v. McGee, 91 So. 3d 659, 663 (Ala. 2012).  In our review, "this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable

---

[1]Tyson styled this motion as a "motion for a judgment notwithstanding the verdict or in the alternative for a new trial."  But our rules of civil procedure do not include a "motion for a judgment notwithstanding the verdict."  See Fitzpatrick v. Hoehn, 262 So. 3d 613, 620 n.4 (Ala. 2018) ("Rule 59, Ala. R. Civ. P., as amended in 1995, renamed the 'motion for a judgment notwithstanding the verdict' as a 'renewed motion for a judgment as a matter of law.'").

inferences as the jury would have been free to draw." Waddell & Reed, Inc. v. United Invs. Life Ins. Co., 875 So. 2d 1143, 1152 (Ala. 2003). Judgment as a matter of law "in favor of a movant who does not assert the claim … but who only opposes it" is appropriate only if the movant can either show that the claim is based on an invalid legal theory or that one or more elements of the claim are unsupported "by substantial evidence." Ex parte Helms, 873 So. 2d 1139, 1143 (Ala. 2003). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989).

<u>Analysis</u>

Tyson argues that the circuit court erred in denying his motion for judgment as a matter of law because, he says, the Harbin brothers failed to present substantial evidence of undue influence. We disagree.

To prove undue influence, a plaintiff must demonstrate:

"'(1) that a confidential relationship existed between a favored beneficiary and the testator; (2) that the influence of or for the beneficiary was dominant and controlling in that

5

relationship; and (3) that there was undue activity on the part of the dominant party in procuring the execution of the will.'"

Furrow v. Helton, 13 So. 3d 350, 353-54 (Ala. 2008) (quoting Clifton v. Clifton, 529 So. 2d 980, 983 (Ala. 1988)).  Tyson says that the Harbin brothers failed to offer substantial evidence of two of these elements -- that he was "dominant and controlling" in his relationship with Gwendolyn and that "there was undue activity" in procuring the will. Furrow, 13 So. 3d at 353.

A. Dominance and Control

The Harbin brothers had to produce enough evidence for a jury to reasonably infer that Tyson was the dominant and controlling party in his relationship with Gwendolyn.  They could meet that burden using circumstantial evidence, Pirtle v. Tucker, 960 So. 2d 620, 631 (Ala. 2006), and they did so here.  The evidence presented at trial showed that, although Gwendolyn continued her job as a radiology technician after her stroke, she was financially dependent on Tyson and lived in a house he owned.  Carson testified that Gwendolyn was scared to talk to her ex-husband about issues arising from their divorce for fear that Tyson would get mad.  Carson also stated that his mother -- "a real rambunctious

6

woman" -- changed after her stroke. According to Carson, she had a harder time keeping up at work, was sleepier, and lost "that energy she once had." In addition, Cole testified that his formerly "strong-willed" mother became "submissive" to Tyson after her stroke and that Tyson liked to keep tabs on his mother. Taken together, it is clear that a reasonable jury could have concluded from this evidence that Tyson was dominant and controlling in his relationship with Gwendolyn. See Hayes v. Apperson, 826 So. 2d 798, 804 (Ala. 2002) (noting that "the fact that a beneficiary controls the personal, business, and household affairs of a testator is evidence of a dominant and controlling influence").

### B. Undue Activity

The Harbin brothers also provided sufficient evidence to meet the undue-activity element of their undue-influence claim. When determining whether someone was unduly active in procuring the execution of a will, "each fact should be considered in the context of the entire situation and in light of the other criteria for determining undue influence." Crump v. Moss, 517 So. 2d 609, 613 (Ala. 1987). Plaintiffs may use circumstantial evidence to prove undue activity, Allen v.

Sconyers, 669 So. 2d 113, 117 (Ala. 1995), and they may demonstrate undue activity in a variety of ways, see McGimsey v. Gray, 260 So. 3d 25, 32 (Ala. 2018) (stating that "it is not the absence or presence of any one factor … that determines whether there was undue activity"). For example, a person may be considered unduly active if that person initiated the proceedings to prepare the will, participated in preparing the will, employed the drafter, selected the witnesses, kept the testator away from others, or concealed the making of the will after the fact. McGee, 91 So. 3d at 664.

Although some of the facts here -- such as Gwendolyn's choosing the drafting attorney and Tyson's openness about the new wills -- suggest no undue activity, other facts amount to substantial evidence that Tyson was unduly active in the preparation of the will. For instance, it is undisputed that Tyson and Gwendolyn worked together in writing new wills. And while Tyson denied speaking with the attorney who drafted their wills before executing those wills, that attorney testified that Tyson and Gwendolyn attended a preliminary meeting about will drafting together. See McGee, 91 So. 3d at 664 (noting that being active in the

8

preparation of the will is circumstantial evidence of undue activity). Gwendolyn's brother also testified that, before her stroke, Gwendolyn's life revolved around her boys. And even after her stroke and before she wrote her new will, Gwendolyn said in a social-media post that her boys were "her world." But Gwendolyn's new will -- which Tyson participated in writing -- effectively disinherited Cole and left Carson a few odds and ends. See King v. Aird, 251 Ala. 613, 617, 38 So. 2d 883, 887 (1949) ("On the issue of undue influence the jury had the right to consider the relationship of the parties to see if an unnatural disposition had been made by the testator."). Indeed, the new will left the vast majority of Gwendolyn's estate to Tyson,[2] even if he did say he wanted to give much of it to Cole and Carson eventually.

It is clear that the Harbin brothers provided substantial evidence that Tyson was unduly active in procuring Gwendolyn's will.[3]

---

[2]Specifically, the will left Tyson with Gwendolyn's interest in family land that the Harbin brothers used for hunting, entitled Tyson to receive $100,000 in proceeds from the sale of her marital home, and gave him her jewelry and car.

[3]Tyson also argues that the circuit court erred in applying the "scintilla of evidence" rule instead of the "substantial evidence" rule to

Consequently, a reasonable jury was entitled to find that Tyson used his dominant and controlling influence over Gwendolyn to make her effectively disinherit her sons.

<u>Conclusion</u>

Because the Harbin brothers provided substantial evidence to support their undue-influence claim, we affirm the circuit court's judgment.

AFFIRMED.

Parker, C.J., and Shaw, Bryan, and Mendheim, JJ., concur.

_____

Tyson's initial motion for judgment as a matter of law. The circuit court, in ruling on Tyson's motion, stated from the bench that a prima facie case had been made with "the minimal version of some scintilla of evidence in light viewed most favorably to [the Harbin brothers]." In Alabama, "substantial evidence" is required to submit an issue to the jury, § 12-21-12(a), Ala. Code 1975, not a "scintilla of evidence." It is unclear whether the circuit court simply misspoke here or actually applied the wrong standard. In any event, any error in applying the wrong standard would be harmless here because, as we have recounted, the Harbin brothers produced substantial evidence of undue influence. Thus, it would not matter if the circuit court applied the "scintilla of evidence" standard to Tyson's initial motion for judgment as a matter of law.